(No. 20991.—)

JOSEPH LEVINSON *et al.* Defendants in Error, *vs.* THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, Plaintiff in Error.

*Opinion filed April 23, 1932—Rehearing denied June 8, 1932.*

WINSTON, STRAWN & SHAW, and H. L. HOWARD, (EDWARD W. EVERETT, and GEORGE T. EVANS, of counsel,) for plaintiff in error.

CASSELS, POTTER & BENTLEY, (RALPH F. POTTER, KENNETH B. HAWKINS, and GEORGE C. BUNGE, of counsel,) for defendants in error.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This is a suit on an indemnity policy issued by plaintiff in error indemnifying defendants in error against robbery. The case was tried in the municipal court of Chicago, where defendants in error, who conduct a loan bank

or pawnshop, recovered judgment in the sum of $18,791.60. The Appellate Court affirmed this judgment, and the cause is here on writ of *certiorari*.

The action is based on an asserted robbery of defendants in error's pawnshop. The defense is that the robbery was not genuine but simulated; that no proof of loss was made as required by the policy, and that defendants in error did not keep their books and accounts in such a manner that the loss could be accurately determined therefrom, as they were required by the policy to do. Defendants in error by the second count of their statement of claim allege waiver of the provisions of the policy requiring proof of loss within sixty days, but notwithstanding this condition of the pleading the trial court admitted much evidence offered by defendants in error on the theory that it tended to show compliance with the provisions of the policy as to proof of loss, but at the close of defendants in error's evidence the trial court struck out all that evidence and no cross-error on this ruling is assigned. Plaintiff in error, however, complains here that the admission of this evidence brought confusion into the record which was prejudicial to plaintiff in error, and that the error in admitting such evidence was not cured by later striking it from the record. It is also argued here that the trial court should have sustained plaintiff in error's motion, at the close of all the evidence, to instruct the jury to return a verdict for it. Error is also assigned here on the rulings of the court as to the admission of testimony and instructions given and refused and on prejudicial conduct of counsel for defendants in error.

The undisputed facts are, that defendants in error owned and operated a pawnshop in the city of Chicago. About sixty feet back from the entrance to the room occupied by them a space was partitioned off as an office, in which were kept two safes, a cash register and certain office furniture. When the place was closed the jewelry stock was placed

in one safe and property held on pledge in the other. The main room also contained clothing, trunks and other merchandise. On the morning of the alleged robbery defendant in error Joseph Levinson entered the store between 8:30 and 8:50 and locked the door after him. Shortly thereafter one William E. Cornes sought admission, but was told by Levinson that the place would not be open until 9:00 o'clock. About 8:50 one Peter Spiegel, a clerk employed by defendants in error, was admitted by Levinson, who locked the door after him. Spiegel began sweeping the floor while Levinson was engaged in getting the jewelry stock out of the safe and arranging it for display. Within a few minutes after admitting the clerk a strange man came to the door and at Levinson's direction Spiegel admitted him and locked the door after him. It also appears that one Earl G. Lewis came to the door seeking admission and found Cornes waiting to be admitted. Finding the door locked he looked through the glass but saw no one in the room. Police officer Delacker passed the door while these two men were waiting to be admitted and also looked into the building but saw no one. About 9:10 A. M. this police officer again passed the loan bank and saw Lewis and Cornes still standing out in front. The door of the pawnshop was then found unlocked and the three men entered. The officer called and received a response from the toilet room, which was adjacent to the office. Entering the toilet room they found Levinson and Spiegel bound with ropes. They were released. The examination of the room showed a number of cards on which jewelry had been fastened strewn about the floor. Officer Kerwin, who also was with Delacker, called the police station, and the squad arrived and took all present to the police station, where statements were made to the officers. Levinson and Spiegel testified on the trial that after this strange man was admitted he asked Spiegel to see a suit of clothes, and Spiegel called to Levinson, who left the trays of jewelry and went to the cloth-

ing rack, and that the stranger then produced a revolver and ordered Levinson and Spiegel into the toilet room, commanded them to lie down on the floor and tied their hands and feet, telling them to lie quietly.

Lewis' testimony was taken by deposition, in which he stated that while he and Cornes were standing near the front door, a man weighing about 200 pounds, wearing a light, loose-fitting overcoat and shell-rimmed glasses, came out of the pawnship and went down the street; that he passed so close to the witness that he almost brushed against him; that he had one hand in his pocket and that he carried nothing in his other hand.

Clement J. Stott, representing plaintiff in error, went to the pawnship on that day to check the loss. About 1 :00 o'clock he and defendant in error Harry Levinson began checking the stock book and pledge book to determine the missing articles which belonged to the stock kept by defendants in error, and pledges. This checking work was kept up until 8 :00 P. M. on that day, all of the following day and for about two hours on the third day. The check, as shown by these books, indicated that 375 articles, consisting of diamonds, rings, scarf pins and diamond emblems, were missing. Stott also questioned Spiegel and Joseph Levinson as to what happened, and wrote out a statement, which each of them signed. A day or two after the robbery Joseph Levinson and Spiegel were called to the office of William F. McNamara, claim attorney for plaintiff in error, and were again examined separately. McNamara dictated a statement, which Levinson and Spiegel signed. These statements were sworn to before Stott as notary public and were forwarded by McNamara, together with the list of missing articles, to the home office of plaintiff in error. Harry Levinson testified that Stott expressed himself well satisfied with the manner in which defendants in error kept their books and records, and that McNamara informed them that he was going to send the statement in to

New York and that defendants in error would hear from them later on. He testified also that he later called McNamara over the telephone and inquired whether payment on the policy had been received, to which McNamara replied that it had not been received but not to worry about it; that it might be out any day, and that he would let the witness know when the check came in. McNamara and Stott denied having made the statements testified to by Levinson. McNamara testified that he told Levinson it would be necessary for them to make further proof, if they had it, in order to come under the policy, but that he did not furnish them with any forms of proof of loss. Stott also testified that he told Joseph Levinson that if they had any further proof they should furnish it in order to come under the policy; that he did not say anything to them about reporting the loss on forms of proof of loss furnished by the company and that he did not furnish them with any forms on which proof of loss was to be made. The policy provided that affirmative proof of loss or damage under oath, on forms to be provided by the company, must be furnished to the insurer within sixty days of the date of the discovery of the loss. The policy also provided that such proof shall contain a complete inventory of all the property stolen or damaged, together with its cost, and that a statement describing the damage done, the interest of the insured in the property, reasonable evidence of the commission of the robbery, and a description of other similar insurance, if any, on the property insured.

Plaintiff in error urges that the trial court should have directed a verdict because of the failure of defendants in error to prove that they filed a proof of loss as required by the policy, and for the further reason that there was no evidence of waiver on the part of the insurer of the requirements concerning proof of loss.

A contract of insurance will be liberally construed in favor of the insured, so as not to defeat, without necessity

therefor, his claim to indemnity. (*Healey* v. *Mutual Accident Ass'n*, 133 Ill. 556.) The basis for this rule is, that the conditions of the insurance policy having been prepared and presented by the insurer in the language which it chose for the purpose of expressing its obligations and limiting its liabilities, it is but just that the construction of uncertain and ambiguous language should be liberally in favor of the insured. (*Forest City Ins. Co.* v. *Hardesty*, 182 Ill. 39; *Commercial Ins. Co.* v. *Robinson*, 64 id. 265.) No proofs of loss on forms furnished by plaintiff in error were made by defendants in error as required by the policy, and defendants in error's right of recovery, if any they have, must therefore depend, in part, on the ground stated in the second count of the statement of claim—that is, that proof of loss was waived.

It is undisputed that on the day of the loss the defendants in error notified plaintiff in error, through its agents in Chicago, of the loss. It sent no form for proof of loss to them, but the agents of plaintiff in error went to the pawnshop to investigate, and did investigate, the loss by examining the books and checking as to missing articles. Thereafter they (plaintiff in error's agents) made up forms of statements covering the loss, which were sworn to by defendants in error and mailed to the plaintiff in error. Those facts were evidence tending to support the claim of defendants in error that plaintiff in error waived proof of loss in strict compliance with the terms of the policy. Defendants in error testified that plaintiff in error's agents told them that no further proof would be necessary. While this is denied, an issue of fact was thereby raised for consideration by the jury. It is argued that neither Stott nor McNamara had any authority to waive the filing of a proof of loss, but the question here as to waiver is whether the company, by its acts in receiving the statements of investigation through its agents, and sworn statements by defendants in error in relation thereto, and its failure to send

blank proofs of loss after receiving notice of loss through such agents, waived formal proof of loss. There is sufficient evidence in the record to justify the court in submitting that issue to the jury, and it was not error to refuse to withdraw it through a peremptory instruction. *Fray* v. *National Fire Ins. Co.* 341 Ill. 431.

Counsel for plaintiff in error argue that the judgment of the Appellate and municipal courts should be reversed because the verdict of the jury, based on documentary and oral evidence, does not support the judgment; that under the rule that the party offering documentary evidence is bound by the statements made therein, defendants in error's own evidence discloses that they do not have a cause of action. Regardless of the effect of documentary evidence and the statements made by defendants in error, there was a question of fact whether there had been a robbery. That question was one proper to be determined by the jury.

Counsel for plaintiff in error also argue that it was error to admit in evidence a certain written statement made by Earl G. Lewis, who in his deposition stated that he stood in the doorway of the pawnshop when the supposed robber walked out. It appears that Lewis had signed such a statement. Plaintiff in error, about a month before trial, gave notice of taking, and did take, Lewis' deposition. Lewis was then suffering from tuberculosis and died before the trial. In his deposition he testified as we have indicated. On cross-examination during his testimony on deposition defendants in error's counsel presented to him a paper which he identified as having been signed by him, and it was marked for identification. Counsel for plaintiff in error requested that he be permitted to examine the paper so that he might examine Lewis on re-direct, but such request was refused on the ground that defendants in error's counsel was not offering it in evidence. It appears from the deposition that counsel for plaintiff in error stated that he desired to examine the witness concerning the paper on re-direct

and would object to introduction of it on the trial of the case or the use of it in any way unless it was then produced so that he could use it on re-direct examination of Lewis. The paper identified by Lewis was not attached to the deposition, but at the trial it was, over the objection of plaintiff in error, offered and received in evidence on the unsworn statement of the reporter who reported the deposition that the paper was the one identified by Lewis during the taking of the deposition. This written statement should not have been admitted. Section 30 of the Evidence act (Smith's Stat. 1931, chap. 51, p. 1478,) requires that all exhibits produced before the commissioner or the person authorized to take the deposition, "or which shall be proved or referred to by any witness * * * shall be enclosed, sealed up, and directed to the clerk of the court in which the action shall be pending, with the names of the parties litigant endorsed thereon." This is a plain, unambiguous requirement of the statute. The statement identified by Lewis was not attached to the deposition or sealed up with it and was for that reason incompetent. It was incompetent and its admission highly prejudicial for the further reason that it tended to qualify his statement made in the deposition. If defendants in error's counsel intended to use it in evidence it was the right of plaintiff in error's counsel to interrogate the deponent concerning it. In this case, where the witness died prior to the trial and further examination of him became impossible, the admission in evidence of this statement was grossly prejudicial. Neither the witness whose deposition was taken nor counsel for plaintiff in error were given an opportunity to bring about an explanation or correction either of his testimony or of the statement, and though the modification of his testimony by such statement may have been but slight, opposing counsel had a right to use it for further examination of the witness if the statement was to be used in evidence. As was said by this court of a similar situation: "Such a

practice, if tolerated, would lead to tampering with the evidence thus sought to be taken and afford a convenient shield for perjury." (*Edleman* v. *Byers & Gilmore,* 75 Ill. 367.) It precludes opposing counsel from an examination of the witness on the document identified, which is his right.

It is next argued that plaintiff in error did not procure a fair trial because of prejudicial questions asked certain of its witnesses in an effort to impeach them. One Maurice Levinthal was asked on cross-examination whether he did not leave his last employer because he was accused of stealing. Objection was raised to this question and exception taken to counsel's conduct in asking it. Thereafter Levinthal was asked the following question, "Have you ever been arrested?" Objection was offered and sustained. Again, the witness was asked, "Were you arrested on that warrant?" Objection was sustained, and then the question was asked, "Was there a trial on it?" By various questions counsel for defendants in error also implied that the witness had stolen from the defendants in error. Objections to these questions were overruled on the promise of counsel that he would connect up the testimony and show it competent. No effort appears to have been made, however, to connect up such proof. In an endeavor to impeach Levinthal defendants in error placed one Max Solar, a former employer of Levinthal, on the witness stand and the following questions were asked him: "Do you know whether or not Mr. Levinthal was ever arrested?" Objection to the question was sustained. "Did you ever discover Maurice Levinthal in any dishonest act while he was working for you?" Objection to that was sustained. These questions were improper and highly prejudicial, as counsel should have known. This appears to be conceded by counsel for defendants in error, but justification is offered on the ground that plaintiff in error had adopted an erroneous line of examination or theory of evidence and so cannot complain if opposing counsel thereafter pursues a similar line

or accepts his theory of evidence in the examination of witnesses. They argue that Levinthal was called by plaintiff in error for the sole purpose of impeaching defendants in error; that his testimony had no bearing on the issues, and its sole purpose, in effect, was to prejudice defendants in error in the eyes of the jury. An examination of the record discloses that the testimony of Levinthal which defendants in error contend was improper was admitted without objection. It may be further observed that incompetent evidence produced by one witness does not justify an attempt to produce evidence of that character by another or the same witness. The effect necessarily produced on the jury was that defendants in error's counsel was seeking to prove that Levinthal was a thief. An endeavor to produce such evidence by methods other than those fixed by the law was highly prejudicial, and the fact that objections to such questions were sustained did not remove the prejudicial effect. The law provides that proof of conviction of certain crimes, when made by authenticated records, may be received as evidence tending to impeach a witness. (*People* v. *Garippo,* 321 Ill. 157; *People* v. *Decker,* 310 id. 234.) No attempt was made to even approach the requirements of the law as to such proof. This conduct on the part of counsel was clearly prejudicial.

Counsel for plaintiff in error also complain of inflammatory remarks and criticism of them indulged by counsel for defendants in error in his argument before the jury. While as to much of it objection was sustained by the court, yet it is evident that it did not produce the effect of causing counsel for defendants in error to abandon that character of conduct. Counsel have no right, either by direct charge or insinuation, to attempt to prejudice a jury against opposing counsel. Such conduct is not ethical and should not be permitted. Much colloquy occurred between counsel on both sides during the trial. The court should not permit counsel to engage in argument between them-

selves but should require that objections be addressed to the court. Infractions of this rule sometimes occur involuntarily during the heat of a contested lawsuit and it can not be expected that counsel will always maintain perfect poise, but such does not justify actions on the part of counsel which appear to be an attempt to prejudice the jury against opposing counsel as the record shows was indulged by counsel for defendants in error in this case.

Counsel for plaintiff in error complain of instructions given and of the refusal of others tendered. The first given instruction on which error is assigned told the jury that the authority of an agent may be enlarged by implication where the principal permits the agent to do acts not expressly authorized, and if, through inattention or otherwise, the principal suffers his agent to act beyond his authority without objection, the principal is bound to those who are not aware of any want of authority to the same extent as if the power had been directly conferred upon the agent by the principal. This instruction is objectionable, in that it omits the requirement that the party dealing with such agent must show knowledge on his part of facts giving color to such grant of authority. A third party dealing with an assumed agent may not rely merely on the latter's statement concerning his agency but must show knowledge of facts tending to indicate that the principal is holding such person out as its agent. *Merchants' Nat. Bank* v. *Nichols & Co.* 223 Ill. 41.

The second instruction objected to, told the jury that if a defendant insurance company investigates loss on its own account and so conducts itself with relation thereto as to show a satisfaction with the knowledge thus obtained or to induce reasonable belief in the insured that it is so satisfied and does not desire affirmative formal notice or proofs, it will amount to a waiver of such formalities. This instruction is open to the objection that it might well mislead the jury into believing that the mere fact of investi-

gation on the part of the insurance company concerning the loss amounts to a waiver of the proof of loss required by the contract. While the insurer may, as the result of such investigation, arrive at a conclusion satisfactory to itself as to the facts, such does not necessarily constitute a waiver of proof of loss required by the policy. This instruction should not have been given.

Counsel complain also of the refusal of the court to give certain instructions tendered by plaintiff in error, the first of which was so framed as to tell the jury that the company had a right, under the terms of its policy, to make a complete investigation of its own concerning the facts surrounding the alleged robbery, and that any sworn statements taken in such investigation, or copies of books and accounts so taken, do not constitute the proof of loss that the plaintiffs were required to file with the defendant company under the terms of the policy. This instruction ignored the issue of waiver. Such statements may or may not be taken as a waiver of proof of loss stipulated in the policy. Whether they constitute such waiver depends upon the facts and circumstances surrounding the taking of them. The next instruction embodied, in substance, the same point.

The refusal of other instructions is likewise assigned as error, but under the views we entertain concerning the matter of waiver of proof of loss it was not error to refuse them.

By reason of the condition of the record in this case the errors hereinbefore pointed out were prejudicial and require a re-trial of the cause.

The judgments of the Appellate and municipal courts are reversed and the cause is remanded to the municipal court.

*Reversed and remanded.*