JOSEPH C. LYON, Plaintiff-Appellee, v. LUMBERMENS MUTUAL CA-
SUALTY COMPANY, Defendant-Appellant.

First District (4th Division)   No. 1—89—3292

Opinion filed December 20, 1990.

Condon, Cook & Roche, of Chicago (Francis J. Leyhane III and Mark E. Condon, of counsel), for appellant.

Hanson & Shire, P.C., of Chicago (Paul H. Strecker, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Joseph C. Lyon, filed an action for declaratory judgment and other relief, seeking construction of the loss settlement provisions of an insurance policy that was issued by defendant, Lumbermens Mutual Casualty Company. Lyon seeks payment of his claim for losses incurred when the cash receipts for several of his McDonald's stores were stolen from a truck on two separate occasions. The insurance policy in issue covers all eight of the McDonald's locations in which Lyon has an ownership interest. Receipts from the restaurants were collected by the driver of a truck for delivery to a bank, and when the two robberies occurred, cash envelopes from several of the stores were taken.

The trial court granted Lyon's motion for summary judgment

against Lumbermens on the coverage issue and entered a final order assessing money damages of $65,460.62, plus interest and costs.

On appeal, Lumbermens argues that the trial court's construction of the policy was erroneous because instead of applying the clear and unambiguous policy limitation for the losses incurred, the court allowed a "per store" multiplier on the $10,000-loss-per-occurrence limitation. According to Lumbermens, the loss limitation should have operated to keep the insurance company's liability to $10,000 for each of the two occasions when the truck was robbed. Instead, the court ruled that the loss limitation applied to each restaurant's receipts that were taken from the truck.

For the reasons that follow, we affirm the judgment of the trial court.

Background

Lyon, as owner of eight McDonald's restaurants, engaged the courier services of Metro-Pol to pick up receipts from his restaurants and deposit them in the bank. The receipts from each store were placed in separate envelopes for deposit into separate accounts. On November 23, 1987, and again on January 16, 1988, the Metro-Pol vehicle was broken into while Gilbert Haag, the driver, was inside one of the restaurants collecting receipts. The thief removed several envelopes of money the first time, representing receipts from seven different stores. The second time, proceeds from four of the restaurants were taken.

The restaurants were operated by various holding companies, each one a partnership. Lyon was a partner in each operating company. All eight locations were insured by a single, comprehensive policy of insurance. Each store was allocated a separate premium amount, out of the total charged. The policy contains various coverage sections, but the one in issue in this lawsuit is the crime coverage section. The general declarations page of this section states that under the "money and securities" coverage, the limit of liability is $10,000 for "Loss Outside the Premises."

"Loss outside the premises" is explained as follows:

> "To pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises while being conveyed by a messenger ***."

Despite some skirmishing in the trial court over the question whether driver Haag was a "messenger," the applicability of this provision is not in issue on appeal. Therefore, it is undisputed that the $10,000 loss limitation applies to the "wrongful abstractions" of the

money, "outside the premises," while Haag was conveying the money to the bank. The sole dispute over the interpretation of the policy centers on the meaning and application of the term "occurrence."

According to Lumbermens, there were only two compensable "occurrences," one for each incident of burglary. In contrast, Lyon argued in part that because each McDonald's restaurant was subject to a premium based on its separate risk factors, a distinct occurrence transpired each time the thief appropriated a cash receipts envelope for a particular restaurant.

OPINION

Nothing in the policy deals specifically with what happened in this case. If a thief ran past each of the eight McDonald's locations and grabbed a bag of cash from each, there is no question but that there would be eight separate occurrences under the policy. Lumbermens argues, however, that since the receipts for the various restaurants were together in one location and were all taken at the same time, only one occurrence per burglary is possible. In support, it attempts to rely on one sentence of paragraph 5 of the "Conditions of the Special Crime Coverage Part," as follows:

> "**5. Limits of Liability; Settlement Options.** The limit of the Company's liability shall not exceed the applicable limit of insurance stated in the Declarations ***.
>
> The applicable limit of insurance stated in the Declarations is the total limit of the Company's liability with respect to *all loss of property of one or more persons or organizations arising out of any one occurrence.* All loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series of related acts at the premises, whether committed by one or more persons, shall be deemed to arise out of one occurrence." (Emphasis added.)

In response, Lyon points out that, by its terms, the last sentence of this provision applies only to acts or series of related acts *at the premises*. No such limit is imputed to loss incidental to a series of related criminal acts outside the premises. Lyon gives several additional reasons why the above two sentences, taken together or individually, do not bar coverage under his theory of separate coverages for each restaurant's receipts. He further maintains that to the extent the two sentences of paragraph 5 above create an ambiguity, such ambiguity must be construed against the insurance company. *E.g., Levinson v. Fidelity & Casualty Co.* (1932), 348 Ill. 495, 181 N.E. 321.

We believe that the policy is capable of the construction

that the trial court gave it. In the first place, the one policy was intended to and did cover each of the eight McDonald's locations. Separate premium amounts were calculated for each restaurant, a fact that the trial court apparently found significant. Although counsel for Lumbermens attempted to minimize the significance of this allocation of the total premium among the stores, we disagree. It seems both logical and fair to consider each store as a separately insured entity to which the $10,000 loss limitation applies. In fact, Lumbermens concedes that if each store were robbed, each would be entitled to coverage up to the $10,000 amount. The fact that each store was separately covered, therefore, weighs heavily in favor of the trial court's "per store" interpretation of the "per occurrence" concept.

We agree with Lumbermens that each of the two burglary incidents logically may be seen as one "occurrence" in the ordinary sense. A news reporter would not describe the incident of November 23, 1987, as seven occurrences even though seven cash envelopes were taken. Nor would the January 16 burglary be viewed as four of them. The precise issue before us, however, is whether the insurance contract is susceptible to more than one interpretation, and if it is, what principles of construction apply?

Lumbermens cites cases, primarily from other jurisdictions, which considered whether a set of claims arose from one occurrence or multiple occurrences under particular policies of liability insurance. For example, in *Maurice Pincoffs Co. v. St. Paul Fire & Marine Insurance Co.* (5th Cir. 1971), 447 F.2d 204, the insured sold sacks of contaminated bird seed to eight different customers, feed dealers who in turn resold the seed at retail. Thereafter, many birds dropped dead. The court ruled that the eight *sales* of grain to the dealers constituted eight "occurrences" giving rise to the insured's liability. Although the insurer had argued that the contamination was the cause of the injuries and that there was only one such incident of contamination, the appellate court defined "occurrence" as meaning each specific event or incident for which the insured become liable. (See also *Mason v. Home Insurance Co.* (1988), 177 Ill. App. 3d 454, 532 N.E.2d 526, *appeal denied* (1989), 125 Ill. 2d 567, 537 N.E.2d 811 (Restaurant's sale of each portion of contaminated food held to be a separate occurrence under insured's liability policy).) The *Mason* court noted that most jurisdictions equate the number of "occurrences" with the cause of the injuries for which the insured is liable; in that case, for each sale of poisoned food (even though the poisoning stemmed from the same source, grilled onions). In contrast, a single fire would constitute one occurrence under most policies, even though the property of several

people may have incurred damage from the same fire.

*Maurice Pincoffs Co., Mason,* and similar cases involve questions of policy coverage for the insured's liability to third parties for injuries occurring after a contaminating agent enters into a system of distribution. We do not find that such cases support Lumbermens' position.

Under the definitional provisions of the special crime coverage, " '[p]remises' means the interior of that portion of *any building* which is occupied by the insured in conducting the business as stated in the declarations." (Emphasis added.) Since the special crime coverage limits the loss of each occurrence to $10,000, if a thief steals money within an insured building, the $10,000 limitation applies. Similarly, under the provision for losses occurring outside the premises, if the thief waits until a messenger or carrier takes the daily receipts out of the restaurant for deposit in a bank before "wrongfully abstracting" the money, the $10,000 limitation also applies. There is no ambiguity here, and the meaning of "premises" cannot be disputed as applying to each location.

The major controversy centers on how one views the term "occurrence" and whether the policy itself mandates one view over the other.

Lumbermens asserts that occurrence has a common, generally accepted meaning: "an incident or event." The incidents or events in the pending case are, according to Lumbermens, "the burglaries of November 23, 1987 and January 16, 1988." Under this view, the loss limitation of $10,000 applies, for a total liability of $20,000, regardless of how many restaurants' receipts were stolen.

In contrast, Lyon's theory rests on the "individual identity" of each restaurant's separate envelope of money that was seized. In the first burglary, envelopes from seven of the insured restaurants were removed and in the second, four were, for a total of 11 "occurrences."

Our review of the relevant provisions of the insurance policy leads us to conclude that while the policy does not specifically address this coverage dilemma, Lyon's position seems more in keeping with the purpose of the coverage provided. The general declarations of the crime coverage section notes that in "consideration of the premium," the limits of the company's liability as to "each coverage" shall not exceed $10,000 for loss outside the premises. Such loss is defined as the "wrongful abstraction" of money or securities outside the premises while the money is "being conveyed by a messenger." Because there are eight separate locations that are insured, with separate pre-

mium allocations, and because the policy defines "premises" in such a way as to cover each building, we find it reasonable to assume that the segregated funds of the eight separate restaurants carried with them coverage under the policy of up to $10,000. A renewal endorsement is consistent with this view because it refers to "covered locations." The owner of each covered restaurant would reasonably expect that his cash receipts and securities were insured for up to $10,000 under the policy as soon as the receipts left the premises for transport to the bank.

The only policy language that arguably supports Lumbermens' position is the first sentence of a two-sentence provision in paragraph 5 of the loss settlement provision, previously quoted, which applies the $10,00 limit to "all loss of property of one or more persons or organizations arising out of any one occurrence." In isolation, this one sentence possibly could be construed to mean that the $10,000 cap on losses should apply to the total loss of all of the restaurants in each burglary. No further explanation is given, however, and the second sentence of the provision specifies that "[a]ll loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series of related acts *at the premises*, *** shall be deemed to arise out of one occurrence." (Emphasis added.) Hence, in a robbery at one of the McDonald's locations, Lumbermens' loss apparently would be limited to $10,000, regardless of whose money was taken (including customers) and in what amount. Similarly, this sentence contemplates a series of related acts of dishonesty or fraud, such as embezzlement by an employee. Since this second sentence expressly applies to occurrences at the premises, rather than outside of them, only the first sentence remains on which to hang Lumbermens' argument.

Even if we were to assume that these two sentences were not to be read together and could be studied in isolation, we find the sentence that Lumbermens relies on to be ambiguous, or at least vague. Indeed, the trial court found that the language in this loss limitation provision "confuse[d] the issue."

We are not required or permitted to redraft insurance policy language to fit the preferred interpretation of the drafter, particularly after the insurable event has occurred and a claim is pending. Here, the best that can be said for the policy language that Lumbermens depends on is that its application to the pending facts is unclear. Consequently, we must rely to the principle that the contract of insurance must be construed most strongly in favor of the insured. *E.g., Marshall v. Metropolitan Life Insurance Co.* (1950), 405 Ill. 90, 90 N.E.2d 194; *Levinson v. Fidelity & Casualty Co.* (1932), 348 Ill. 495, 181

N.E.2d 321; see also *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336, 312 N.E.2d 247 (policy is not to be interpreted in a "factual vacuum" and what may not appear ambiguous at first glance might become so in light of particular factual setting).

For the foregoing reasons, we affirm the trial court's decision in favor of Lyon's construction of the insurance policy. Because the amount of damages awarded is not in dispute, we also affirm the judgment amount entered.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.