BRENDA ROTH, Independent Adm'r of the Estate of Angela Roth, Deceased, Plaintiff-Appellee, v. ILLINOIS FARMERS INSURANCE COMPANY, Defendant-Appellant.

Fifth District    No. 5—00—0308

Opinion filed August 7, 2001.

David C. Knieriem, of Law Offices of Morgan & Associates, of St. Louis, Missouri, for appellant.

Joanne T. Stevenson, of Law Offices of Lackey & Lackey, P.C., of Centralia, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

This is an appeal from an order granting a motion for summary judgment in a declaratory judgment action brought to adjudicate the meaning of the language contained within an insurance policy of Illinois Farmers Insurance Company (defendant). The trial court found the underinsured-motorist clause in defendant's insurance policy

ambiguous and awarded the plaintiff $200,000. The only issue in this dispute between the parties is whether the $100,000 per-person limit or the $300,000 per-occurrence limit of the underinsured-motorist coverage applies to the plaintiff's claims. We affirm.

## I. FACTS

Angela Roth died as a result of injuries sustained in an automobile accident. Angela was a passenger in a vehicle driven by Ryan Gebke. The accident occurred as a result of an apparent drag race instigated by the driver of the other vehicle, Darin Diesen. Darin Diesen was at fault and was an underinsured motorist. At the time of the accident, the decedent, Angela Roth, was a 17-year-old minor and resided with her parents and eight brothers and sisters.

Defendant had issued an automobile insurance policy to Angela's parents. That policy provided coverage for Angela's injuries and subsequent death. The policy provided coverage for insured persons, including the policyholder or any family member. The terms of the policy include both uninsured- and underinsured-motorist coverage. The parties agreed that Angela Roth was covered under the policy, and they stipulated to the terms of that policy. The limits-of-liability clauses that are the source of contention between the parties provide as follows:

> "The amounts shown in the Declarations are the limits of liability for Uninsured Motorist [*sic*] which apply subject to the following:
>
> 1. The uninsured[1] motorist *bodily injury* limit for 'each person' is the maximum we will pay for all *damages* resulting from *bodily injury* sustained by one person in any one *accident* or *occurrence*. Included in this limit, but not as a separate claim or claims, are all the consequential *damages* sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow[,] and emotional distress.
>
> 2. The uninsured motorist *bodily injury* limit for 'each *occurrence*' is the maximum amount we will pay for two or more persons for *bodily injury* sustained in any one *accident* or *occurrence*."
> (Emphasis in original.)

The terms of the underinsured-motorist benefits include $100,000 per person and $300,000 per occurrence. The parties stipulated that the total damages sustained by Angela Roth and the next of kin of Angela Roth under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 1998)) exceed $300,000.

---

[1]The underinsured-motorist-coverage rider states, "[A]ll the terms and conditions of Part II—Uninsured Motorist Coverage apply to Underinsured Motorist Coverage."

In settlement of the claims against him, Darin Diesen's liability carrier tendered the sum of $20,000, which represented Diesen's liability limits. Defendant has paid the plaintiff $80,000, which represents the difference between the per-person limit and the $20,000 received on behalf of Darin Diesen.

The independent administrator of the estate of Angela Roth, Brenda Roth (plaintiff), made multiple claims under defendant's underinsured-motorist coverage, including a claim under the Survival Act (755 ILCS 5/27—6 (West 1998)) for Angela's injuries sustained prior to her death and claims of Angela's next of kin under the Wrongful Death Act. Plaintiff first argued that the policy required defendant to pay the $300,000 per-occurrence limit for the claims since they were for two or more persons for "bodily injury" as defined in the policy. Alternatively, plaintiff argued that the terms and definitions in the underinsured-motorist-coverage section were latently and patently ambiguous. Defendant argued that the $100,000 per-person limit applied because all claims arising out of Angela's injury and subsequent death should be considered one claim.

Plaintiff and defendant filed cross-motions for summary judgment. The trial court granted plaintiff's motion because it found defendant's underinsured-motorist clause ambiguous. The court denied defendant's motion for summary judgment. The trial court entered judgment for plaintiff in the amount of $200,000, which represents the difference between the stipulated amounts paid by defendant and the $300,000 per-occurrence policy limit.

## II. ANALYSIS

Plaintiff and defendant agree that claims arising out of the injury to, and death of, Angela Roth are covered by the underinsured-motorist portion of defendant's policy. However, the parties disagree as to whether plaintiff's claims are subject to the per-person limit of $100,000 or the per-occurrence limit of $300,000. Plaintiff argues that the terms of the policy clearly place her claims within the per-occurrence limit. Alternatively, plaintiff argues that the wording of the policy is ambiguous as to whether the separate claims arising out of the injury to, and death of, Angela Roth are subject to the per-occurrence limit or the per-person limit.

●1 The construction of an insurance policy is a question of law subject to *de novo* review. *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 722 N.E.2d 1125 (1999). Our primary objective in construing the language of a policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997). If

the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992). However, if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer, which drafted the policy. *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75. Courts will not strain to find an ambiguity in an insurance policy where none exists. *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 5, 429 N.E.2d 1203, 1205 (1981).

Plaintiff contends that the per-occurrence limit of the underinsured-motorist coverage is triggered by her claims for Angela's personal injuries under the Survival Act and the separate claim of Angela's parents and siblings under the Wrongful Death Act for the loss occasioned by Angela's death. Plaintiff argues these are two different claims that trigger the per-occurrence limit of the underinsured-motorist coverage because they are claims for bodily injury "for two or more persons."

Plaintiff focuses on the definition of "bodily injury" provided in the policy as support for her reading of the per-occurrence limitation. Bodily injury is defined in the policy as meaning "injury to the body, sickness, disease[,] or death of any person." Thus, plaintiff argues that the per-occurrence limit applies anytime two or more persons have a claim for injury to the body or death of "any person" sustained in any one accident. Plaintiff contends that because there are two separate claims, one by Angela's estate for injuries sustained by Angela in the accident and one by Angela's parents and siblings for her wrongful death, there are two or more persons who have a claim for injury to the body, and death, of any person. Finally, plaintiff argues, because the insurance policy does not make its per-occurrence limit subject to the terms of the per-person limit, it is not necessary to interpret the per-occurrence coverage with reference to the terms of the per-person coverage.

Defendant argues that the per-occurrence limit should never be reached because of the terms and definitions of the per-person clause and that, therefore, any supposed ambiguity in the per-occurrence limit is irrelevant. Defendant argues that the per-person limitation includes the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow, and emotional distress. Defendant argues that such language has been held by the Illinois Supreme Court to mean that only one person was injured and that such language is unambiguous. See *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 722 N.E.2d

1125 (1999). Defendant notes that in *McKinney* the court examined language restricting the per-person limits to include damages sustained by anyone else as a result of that bodily injury and held that such language unambiguously limited all claims to the single per-person limit.

Defendant's reliance on *McKinney* is misplaced. Although in *McKinney* the Illinois Supreme Court did address an insurance policy's per-person limit and its effect on the plaintiff's survival claim and wrongful-death claims, the language of the insurance policy in that case is not the language of the insurance policy at bar. The language of the limits-of-liability clauses at issue in *McKinney* provided as follows:

> "1. 'each person' is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury.
>
> 2. 'each accident' is the maximum we will pay for damages arising out of bodily injury to two or more persons in any one motor vehicle accident. This limit is subject to the limit for 'each person.' " *McKinney*, 188 Ill. 2d at 495, 722 N.E.2d at 1126.

The limits-of-liability clauses of defendant's policy provide as follows:

> "1. The uninsured motorist bodily injury limit for 'each person' is the maximum we will pay for all damages resulting from bodily injury sustained by one person in any one accident or occurrence. Included in this limit, but not as a separate claim or claims, are all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow[,] and emotional distress.
>
> 2. The uninsured motorist bodily injury limit for 'each occurrence' is the maximum amount we will pay for two or more persons for bodily injury sustained in any one accident or occurrence."
> (Emphasis omitted.)

The language at issue in *McKinney* is significantly different than the language in defendant's policy. Defendant's use of the word "for" in its per-occurrence clause and Allstate's use of the word "to" in the per-occurrence clause at issue in *McKinney* is a significant difference in the use of language that gives different meaning and effect to each clause. When defendant's definition of bodily injury is included in the per-occurrence clause, the clause provides benefits "for" two or more persons "for" injury or death of "any person." In *McKinney*, Allstate's use of the word "to" in its per-occurrence limitation resulted in an interpretation of the policy that provided payment for bodily injury "to" two or more persons injured in any one accident.

When defendant's policy is examined as a whole, it is possible for

plaintiff's claims to fit into either the per-person clause or the per-occurrence clause as each is applicable to the separate claims asserted. It is clear that the language "the maximum amount we will pay *for* two or more persons *for* bodily injury sustained in any one accident or occurrence" (emphasis added; original emphasis omitted) is applicable to the separate claims asserted by plaintiff. The survival claim asserted by Angela Roth's estate for Angela's predeath injuries and the wrongful-death claim asserted by her parents and siblings for Angela's resulting death qualify under the terms as two or more persons seeking payment for bodily injury (injury to the body of Angela Roth and the death of Angela Roth) sustained in any one accident.

Defendant contends that the per-occurrence clause should not be read in isolation; rather, it asks that we read the entire policy as a whole. However, defendant also contends that we should not reach the issue of the interpretation of the per-occurrence clause because it need not be reached after a proper examination of the per-person clause. We are not to read the provisions of an insurance policy in isolation, but we are required to read the provisions of a contract in light of each other to determine whether an ambiguity exists. *Douglas v. Allied American Insurance*, 312 Ill. App. 3d 535, 727 N.E.2d 376 (2000). Insurance policy provisions should be read in context, not in isolation. *Economy Preferred Insurance Co. v. Ingold*, 302 Ill. App. 3d 360, 707 N.E.2d 983 (1998).

●2 In examining defendant's policy as a whole and the relation of its provisions to each other, we think it significant that the per-occurrence clause in defendant's policy did not expressly make its underinsured-motorist coverage subject to the per-person limit, although in the bodily injury liability portion of its policy, the per-occurrence clause is subject to the per-person limit. The presence of such language in one provision and its absence in another provision within the same policy is significant in that it suggests an intention by the drafter to provide broader coverage in those situations where the language is absent. The absence of such language serves to distinguish *McKinney*, because the language in the Allstate policy in *McKinney* made the "each accident" limitation expressly subject to the limit for "each person."

Defendant argues that because the per-person clause defines the coverage, there is no ambiguity. We disagree. Because we find that *both* the per-person clause and the per-occurrence clause define coverage applicable to the claims asserted by plaintiff, the policy is ambiguous. Defendant would require the reader of the policy, particularly upon reading the "Limits of Coverage" section of the policy, to stop at the first clause of that section and not proceed to number two, the

next clause of the same section, simply because number one is applicable. However, the second clause, number two under the same section, also applies to the claims asserted in this case. It is unreasonable to ask the reader of an insurance policy to stop reading at the first instance of coverage and to deny any subsequent provisions of coverage that may also apply. This is particularly so when neither clause indicates that the application of one demands that the other be forfeited. Where one provision, when read with others, becomes ambiguous, the contract must be construed to favor the insured. *McDonald v. Prudential Property & Casualty Co.*, 304 Ill. App. 3d 422, 710 N.E.2d 556 (1999).

## III. CONCLUSION

Both the per-person clause and per-occurrence clause in the insurance policy's limits of coverage apply to the claims asserted by plaintiff. Because neither clause provides that the application of one excludes the application of the other, the result is confusion to an insured whose claims fall within both, and the policy is ambiguous. Ambiguous terms in an insurance policy generally are construed strictly against the drafter of the policy and in favor of coverage, because the insurer is the drafter of the policy and could have drafted the ambiguous provision clearly and specifically. *Smith v. Allstate Insurance Co.*, 312 Ill. App. 3d 246, 726 N.E.2d 1 (1999).

For the foregoing reasons, we find defendant's insurance policy ambiguous, and we affirm the judgment of the circuit court.

Affirmed.

WELCH and HOPKINS, JJ., concur.