SCOTTSDALE INSURANCE COMPANY, Plaintiff-Appellee, v. DONALD ROBERTSON, as Special Adm'r of the Estates of Bennie Robertson, Jr., and Essie Bell Robertson, *et al.*, Defendants-Appellants.

First District (1st Division) No. 1—02—1398

Opinion filed March 31, 2003.

398

Alvin R. Becker and Christopher A. White, both of Beerman, Swerdlove, Woloshin, Barezky, Becker, Genin & London, and Paul P. Wolf, of Mitchell, Hoffman & Wolf, L.L.C., both of Chicago, for appellants.

Michael J. Flaherty and Richard J. Jacobson, both of Flaherty & Jacobson, P.C., of Chicago, for appellee.

JUSTICE SMITH delivered the opinion of the court:

Defendants, Melvin and Collette Tolliver (the Tollivers), and Maurice K. Robertson, Bennie A. Robertson III, the estates of Bennie Robertson, Jr., and Essie Bell Robertson (collectively, the Robertson defendants), appeal from the trial court's grant of judgment on the pleadings in favor of plaintiff, Scottsdale Insurance Company (Scottsdale) in a declaratory judgment action. The court found that a commercial general liability issued by Scottsdale to the Tollivers unambiguously establishes the limits for any one occurrence to be $1 million, regardless of the number of people who sustain injuries thereby. For the reasons that follow, we affirm.

## BACKGROUND

The Robertson defendants were tenants in an apartment building located at 2114 E. 69th Street in Chicago. The building was owned by a land trust, the beneficial interest of which was held by the Tollivers. Sometime between December 23, 2000, and January 3, 2001, Bennie Jr. and Essie Robertson died and Maurice Robertson and Bennie Robertson III were injured as a result of carbon monoxide poisoning in the apartment building.

The Robertson defendants subsequently filed suit against the Tollivers, alleging that their injuries (and deaths) were proximately caused by the Tollivers' acts and omissions pertaining to the maintenance and configuration of the property's heating system or other negligent acts in maintaining the property.

Scottsdale acknowledged that the policy it issued to the Tollivers applies to the accident that gave rise to the Robertson defendants' claims and offered to settle the lawsuit for $1 million, the amount

Scottsdale claims is the policy's limit for any one occurrence. The Robertson defendants rejected that offer and asked instead for $2 million, the amount they claim they are due under the policy, since its provisions with respect to bodily injury coverage are ambiguous.[1]

The instant declaratory action ensued. In its complaint, Scottsdale sought a declaration from the trial court that the policy's provisions are unambiguous and that its per-occurrence limit is Scottsdale's maximum liability under the circumstances presented by the Robertson defendants' lawsuit. Cross-motions for judgment on the pleadings were filed (735 ILCS 5/2—615(e) (West 1998)), and the trial court entered judgment in Scottsdale's favor.

## ANALYSIS

The Robertson defendants argue that because the policy is, at the very least, ambiguous as to whether the occurrence limits apply, in aggregate, to all bodily injuries suffered by all individuals as a result of the accident, this court should reverse the decision of the trial court which found in Scottsdale's favor.

■ We note first that the entry of judgment on the pleadings is reviewed *de novo*. *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255, 764 N.E.2d 1 (2001).

■ Contracts of insurance are subject to the same rules of construction as are applicable to other types of contracts. When construing an insurance contract, the primary objective is to give effect to the intent of the parties as expressed by the terms of the agreement. *De Los Reyes v. Travelers Insurance Cos.*, 135 Ill. 2d 353, 358, 553 N.E.2d 301 (1990). If the language is ambiguous, or is susceptible of at least two reasonable interpretations, it is to be construed in favor of the insured and against the insurer, as the drafter of the document; however, if the language of the policy is clear and unambiguous, it will be applied as written. *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 5, 429 N.E.2d 1203 (1981); *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). Courts will not strain to find an ambiguity in an insurance policy where none exists. *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497, 722 N.E.2d 1125 (1999). Finally, the construction of an insurance policy is a question of law subject to *de novo* review. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441, 692 N.E.2d 1196 (1998).

Relevant portions of the declarations page in the policy under examination provide that the aggregate limits of liability for products/

---

[1]$2 million is the policy's aggregate limit of liability.

completed operations is $1 million and that the general aggregate (other than products/completed operations) is $2 million. Beneath this language appears "Coverage A," entitled "Bodily Injury and Property Damage Liability." This section provides that the limit for any one occurrence, subject to the products/completed operations and general aggregate limits of liability, is $1 million.

The policy itself provides:

"SECTION I—COVERAGES
COVERAGE A
BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' *** to which this insurance applies ***
   b. This insurance applies to 'bodily injury' *** only if:
      (1) The 'bodily injury' *** is caused by an occurrence[.]" ***
                           * * *
SECTION III—LIMITS OF INSURANCE
1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or 'suits' brought; or
   c. Persons or organizations making claims or bringing 'suits.'
2. The General Aggregate Limit is the most we will pay for the sum of:
   ***
   b. Damages under coverage A ***
                           * * *
5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
   a. Damages under Coverage A ***
      because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence.' "

The policy defines "Bodily Injury" as:

"bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

The policy defines "Occurrence" as:

"an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

According to the Robertson defendants, the ambiguity in the policy arises out of its definition of "bodily injury," which they claim makes bodily injury specific to a single individual ("sickness or disease sustained by *a* person"). (Emphasis added.) By linking the occurrence limits to the bodily injury of *a* person, the Robertson defendants argue, the policy implies that "each" or "any one" person who sustains

bodily injury has his or her own occurrence limits. The Robertson defendants insist that the ambiguity becomes "starkly apparent" when one engages in the "simple exercise" of substituting the policy definitions of "bodily injury" and "accident," along with the dictionary definition of "a," for the terms they define.[2] This yields the following policy construction:

"[T]he Each Occurrence Limit [*i.e.*, the $1 million limit stated in the declarations] is the most we will pay for the sum of: \*\*\* Damages because of all *bodily injury, sickness or disease sustained by one or each or any one person* \*\*\* arising out of \*\*\* *any one accident, including continuous or repeated exposure to substantially the same general harmful conditions.*"

The Robertson defendants claim that if, as this exercise shows, the occurrence limit applies to all bodily injury sustained by "*one* person or "*each* person," or "*any one* person," then by implication, multiple occurrence limits must apply to all bodily injury sustained by multiple persons. We are not so persuaded.

■ Preliminarily, as Scottsdale points out, the Robertson defendants' assertions with respect to policy construction fly in the face of well-settled Illinois law that the number of occurrences under liability policies is determined by the number of causes and not the number of effects. *Illinois Central R.R. Co. v. Accident & Casualty Co. of Winterthur*, 317 Ill. App. 3d 737, 754, 739 N.E.2d 1049 (2000); *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598, 648, 643 N.E.2d 1226 (1994); *Illinois National Insurance Co. v. Szczepkowicz*, 185 Ill. App. 3d 1091, 1094-95, 542 N.E.2d 90 (1989) (number of occurrences determined by reference to the number of causes of injury rather than by the number of individual claims or injuries).

■ Although the Robertson defendants concede that the cause of injuries in this case (the leakage of carbon monoxide) constituted one occurrence, they insist that this is not fatal to their suggested policy construction, in light of the ambiguity within the policy as to whether the claims of all persons suffering bodily injury are subject to a single occurrence limit.

We are aware of no Illinois decision directly on point; however, the Robertson defendants find purported support for their position in *Lyon v. Lumbermens Mutual Casualty Co.*, 207 Ill. App. 3d 730, 566 N.E.2d 388 (1990), and *Roth v. Illinois Farmers Insurance Co.*, 324 Ill.

---

[2]The Robertson defendants supply us with the definition of "a" found in Webster's New World Dictionary: "**1** *a*) one; one sort of [we planted *a* tree] *b*) each; any one [*a* gun is dangerous] ... **2** [[orig. a prep. *an, on,* at]] to each; in each; for each; per [once *a* day]." Webster's New World Dictionary 1 (3d coll. ed. 1988).

App. 3d 293, 754 N.E.2d 439 (2001), *appeal allowed*, 197 Ill. 2d 584, 763 N.E.2d 777 (2001), *appeal dismissed as improvidently granted*, 202 Ill. 2d 490, 782 N.E.2d 212 (2002).

*Lyon* involved eight separate McDonald's franchises, each of which paid its own premium for coverage under a single policy. *Lyon*, 207 Ill. App. 3d at 731. The receipts from each store were placed in separate envelopes for deposit into separate accounts. 207 Ill. App. 3d at 731. On November 23, 1987, and again on January 16, 1988, the vehicle carrying those receipts was broken into while the driver was inside one of the restaurants collecting receipts. 207 Ill. App. 3d at 731. The thief removed several envelopes of money the first time, representing receipts from seven different restaurants; the second time, proceeds from four of the restaurants were taken. *Lyon*, 207 Ill. App. 3d at 731.

Under the policy's limits of liability section, it was stated:

" 'All loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series of related acts at the premises, whether committed by one or more persons, shall be deemed to arise out of one occurrence.' " 207 Ill. App. 3d at 732.

The insurance company argued that since the receipts for the various restaurants were together in one location and were all taken at the same time, only one occurrence took place per burglary, so that its total liability was for two occurrences. *Lyon*, 207 Ill. App. 3d at 732. The insureds argued that, by its terms, the "at the premises" provision applied only to acts or series of related acts that occur at a franchise. No such limit is imputed to a loss incidental to a series of related acts that occur *outside* the premises, as was the case here. 207 Ill. App. 3d at 732.

The court in *Lyon* observed that, if a thief ran past each of the McDonald locations and grabbed a bag of cash from each, then there would be no question that each theft represented a separate occurrence. And, in contrast, if a thief committed several criminal acts within a single McDonald's, it would be treated as one occurrence under the policy, regardless of the number of people affected. 207 Ill. App. 3d at 732. The court's analysis centered around the determination of whether one occurrence or multiple occurrences could be said to have taken place under the circumstances presented. The court focused on the facts that separate premiums were paid for each of the franchises and that the funds in question were segregated and earmarked for separate accounts and concluded that the "premises" language indeed created an ambiguity, to be resolved in favor of the reasonable interpretation advanced by the insured. *Lyon*, 207 Ill. App. 3d at 735.

Although we find the decision in *Lyon* to be well reasoned, we do

not find the particular analysis in which the court in *Lyon* engaged helpful to our resolution of the issue at bar. Here, it is already clear (and the Robertson defendants do not contest) that a single occurrence gave rise to all of the injuries. Our analysis must accordingly focus on whether the policy's definition of "bodily injury" creates an ambiguity such that the construction urged by the insureds ought to prevail. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992).

The Robertson defendants point to *Roth* as an example of a case where the court found an ambiguity as to whether the per-person or the per-occurrence limits of an uninsured motorist provision were triggered by the death of an insured. In *Roth*, a 17-year-old was killed in an automobile accident. Suit was brought on behalf of the minor's estate for personal injuries under the Survival Act (755 ILCS 5/27—6 (West 1998)), and a separate claim was brought by the parents and siblings under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 1998)). *Roth*, 324 Ill. App. 3d at 296. The wording of the policy under consideration was such that the per-occurrence limit was not made subject to the per-person limit, so that the court found an ambiguity as to whether the two separate claims fell under one or the other clause. In particular, neither clause indicated that the application of one demanded that the other be forfeited. *Roth*, 324 Ill. App. 3d at 298. Reading the clauses together, the court found that the interpretations urged by both the insured and the insurer were reasonable and therefore resolved the dispute against the drafter, the insurer. *Roth*, 324 Ill. App. 3d at 299.

The court in *Roth* emphasized the importance of reading provisions of an insurance policy, not in isolation, but in light of each other, to determine whether an ambiguity exists. 324 Ill. App. 3d at 298, citing *Douglas v. Allied American Insurance*, 312 Ill. App. 3d 535 (2000). Employing that approach in the present case, we note that, unlike in *Roth*, the policy under examination in the present case explicitly makes its per-person limit of liability *subject to* its per-occurrence limit. Specifically, the policy provides that "the Each Occurrence Limit is the most we will pay for the sum of *** Damages under Coverage A *** because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence.' " See *McKinney*, 188 Ill. 2d 493 (wherein almost identical "subject to" language was found to unambiguously limit an insurer's liability limit).

Scottsdale directs our attention to *Greaves v. State Farm Insurance Co.*, 984 F. Supp. 12 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) (Table), 335 U.S. App. D.C. 318 (unpublished disposition), and contends that it is on all fours with the instant case. We have carefully

reviewed the decision in *Greaves*, and, although we recognize it is not binding authority on this court, we find its reasoning to be sound and instructive.

In *Greaves*, two people were injured and one person died as a result of an apartment fire. *Greaves*, 984 F. Supp. at 13. The apartment owner's insurer provided coverage with limits of $1 million for each occurrence and $2 million in the aggregate. *Greaves*, 984 F. Supp. at 14. The insurance policy at issue defined "bodily injury" in a manner identical to the policy under examination *sub judice*, as "bodily injury, sickness or disease sustained by a person, including death from any of these at any time." 984 F. Supp. at 15. Like the Robertson defendants in this case, the plaintiffs in *Greaves* argued that the definitions of "bodily injury" and "occurrence," if read together, created an ambiguity. Specifically, that the phrase "by a person" in the definition of "bodily injury" could reasonably be interpreted as referring to only one person, so that injury to multiple persons triggered multiple occurrence limits.

Like the Robertson defendants, the plaintiffs in *Greaves* contended that, though a single cause was responsible for all damages sustained, *each person* who suffers bodily injury constitutes a separate occurrence under the policy's definition. 984 F. Supp. at 15. Again like the Robertson defendants, the plaintiffs in *Greaves* urged a construction whereby the discrete phrase "by a person" acts as a limitation on quantity. Their conclusion was that, if bodily injury encompasses injury to a single person, then each time a person sustains bodily injury, a separate accident occurs, triggering additional liability limits. 984 F. Supp. at 15.

In rejecting the plaintiff's argument, the court in *Greaves* initially condemned the "series of elaborate and novel feats of syntactical acrobatics" necessary to reach the conclusion that each person who suffers bodily injury constitutes a separate occurrence under the policy's language. 984 F. Supp. at 15. The court concluded that the only reasonable interpretation of the phrase "by a person" is that it functions as a qualitative limitation. That is to say, the policy employs the phrase "by a person" to clarify that it is human bodily injury to which the policy's protections extend. 984 F. Supp. at 16.

The interpretation by the court in *Greaves* that the limitation was qualitative and not quantitative was "buttressed" by other language of the policy in that case. Specifically, in the paragraph that set forth the per-occurrence limit of coverage in that policy appeared the language "the most that we will pay for all medical expenses because of bodily injury sustained by *any one person* is [$5,000]." 984 F. Supp. at 16. It was significant to the court that the insurer clearly employed

language of a quantitative nature in that section of the policy, because to sanction the plaintiff's "awkward" interpretation of the phrase "a person" would create an internal tension within the policy by suggesting that its drafters used the imprecise "a person" and the specific "any one person" synonymously. 984 F. Supp. at 16.

Here, the policy under review contains a medical expense limit to "any one person" that is identical to the language of the policy considered by the court in *Greaves*. We agree that to assume limitation language in one section of a policy is used synonymously with less precise language in another section represents a strained and unnatural interpretation. See, *e.g.*, *Yarbert v. Industrial Fire & Casualty Insurance Co.*, 56 Ill. App. 3d 1034, 1036 (1978) (in order not to lead to unreasonable results or to defeat the intention of the parties to a contract of insurance, the construction thereof must not be arbitrary, irrational or forced). We find that where the drafters meant to employ a term of numerical limitation, they knew how to do so.

The Robertson defendants argue that, if the phrase "to a person" were understood as a qualitative limitation, it would be redundant and therefore impermissible, since cars and dogs (for example) cannot sue for bodily injuries. In light of the fact that insurance policies consistently define "bodily injury" as "bodily injury," we find the Robertson defendants' argument as to the impropriety of this so-called redundancy to be unpersuasive. Moreover, our research has revealed that the exact definition of bodily injury under examination in this case is widely used in insurance contracts (see, *e.g.*, *State Farm Mutual Automobile Insurance Co. v. George*, 326 Ill. App. 3d 1065, 762 N.E.2d 1163 (2002); *Johnson v. State Farm Mutual Automobile Insurance Co.*, 323 Ill. App. 3d 376, 752 N.E.2d 449 (2001); *Creamer v. State Farm Mutual Automobile Insurance Co.*, 161 Ill. App. 3d 223, 514 N.E.2d 214 (1987)), and has never been challenged or criticized as being redundant. In contrast, we note that if every instance of bodily injury indeed constitutes a separate occurrence, then the language "[t]he most we will pay for all damages because of bodily injury *** arising out of any one occurrence [is $1 million]" contained in the policy would be rendered mere surplusage. See *International Minerals & Chemicals Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 378, 522 N.E.2d 758 (1988) (a construction of an insurance policy which results in surplusage is to be avoided).

## CONCLUSION

For the foregoing reasons, we determine that the reading of the policy urged by the Robertson defendants is forced and unreasonable. Because the policy's language is not susceptible of the interpretation

the Robertson defendants advance (*Schnackenberg*, 88 Ill. 2d at 5), we find no ambiguity and are obliged to apply the terms as they are written.

Affirmed.

McNULTY and O'MALLEY, JJ., concur.