265 F.Supp.2d 1078 (2003)
CINCINNATI INSURANCE COMPANY, Plaintiff,
v.
TELEVISION ENGINEERING CORP., Defendant.
No. 4:00CV1164DDN.
United States District Court, E.D. Missouri, Eastern Division.
February 15, 2002.
As Amended Nunc Pro Tunc May 20, 2003.
Russell F. Watters, Managing Principle, Brown and James, P.C., St. Louis, MO, for plaintiff.
David G. Ott, E. W. Gentry Sayad, Armstrong Teasdale, LLP, St. Louis, MO, Donald D. Heck, Paul W. Kopsky, Sr., Kopsky and Heck, Chesterfield, MO, for defendant.
Cristopher S. Knopik, Knopikkriegervarner, Tampa, FL, for movant.

AMENDED SUPPLEMENTAL MEMORANDUM
NOCE, United States Magistrate Judge.
Before the Court are the cross-motions of the parties for summary judgment (Doc. Nos. 26 & 27). The parties have consented to the exercise of jurisdiction by the *1079 undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).
This is a diversity action for a declaratory judgment between an insurance company and its insured. The relevant facts are undisputed. The only issue in dispute is the limit of coverage owed to the insured under the insurance policy. Plaintiff Cincinnati Insurance Company (Cincinnati) maintains that its coverage is limited by the terms of the policy to $1 million. The insured, defendant Television Engineering Corporation (TEC), argues that the policy provided coverage of $2 million.
The record establishes the following. Cincinnati issued a commercial general liability policy to TEC effective October 19, 1993, through October 19, 1994, and renewed annually through October 19, 1996. TEC designs, manufactures, assembles, markets and sells mobile broadcast equipment. One of TEC's products is an ENG van, a motor vehicle used by television stations to broadcast live from remote locations. TEC sold an ENG van to a Florida television station prior to July 19, 1995. On July 19, 1995, Valerie Waltz and Daniel Nelson, two employees of the television station who were working in the van, were electrocuted when Nelson raised the van's metal mast into power lines directly overhead.
Waltz and Nelson filed separate personal-injury lawsuits against TEC, asserting various claims of strict product liability and negligence. Cincinnati undertook to defend TEC in both lawsuits in accordance with the terms of its insurance policy issued to TEC. In correspondence between the parties, Cincinnati indicated that the limit of its coverage was $2 million. However, while the Waltz and Nelson suits were still pending, Cincinnati informed TEC that its coverage was, in fact, limited by the "Each Occurrence Limit" of the policy to $1 million.
TEC filed suit against Cincinnati for a declaratory judgment that TEC was entitled to $2 million in coverage under the "Products-Completed Operations Aggregate Limit." The action was removed to this court (Cause No. 4:99CV1010). On July 17, 2000, this action was dismissed upon TEC's own motion.
TEC settled the Waltz litigation and the Nelson litigation, and agreed with Waltz and Nelson to pay additional sums to them, if the policy was held to provide $2 million in coverage.
Although Cincinnati had paid Waltz and Nelson the amounts of their settlements on behalf of TEC, the question of the limit of coverage remained unresolved, and on July 19, 2000, Cincinnati commenced the present action.[1]
The Declarations portion of the insurance policy provides in relevant part:

LIMITS OF INSURANCE
Each Occurrence Limit $1,000,000
Products-Completed Operations
 Aggregate Limit 2,000,000
Personal & Advertising Injury Limit 1,000,000

Other relevant policy provisions are:
SECTION I-COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.... But: (1) The amount we will pay for damages is limited as described in LIMITS *1080 OF INSURANCE (SECTION III); and ...
* * * * * *
SECTION III-LIMITS OF INSURANCE
1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
a. Insureds;
b. Claims made or "suits" brought; or
c. Persons or organizations making claims or bringing "suits."
2. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."
* * * * * *
4. The Each Occurrence Limit is the most we will pay for the sum of:
a. Damages under Coverage A; and
b. Medical expenses under Coverage
C because of all "bodily injury" and "property damage" arising out of any one "occurrence."
* * * * * *
SECTION V-DEFINITIONS
* * * * * *
9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
* * * * * *
11a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work". . . .
For summary judgment, Cincinnati argues that the "Each Occurrence Limit" provision capped its limit of liability for the Waltz and Nelson suits at a total of $1 million as they arose from one occurrence. In support of its motion, Cincinnati submits the affidavit of TEC's insurance agent, who states that he understood there was only $1 million of coverage on products-completed operations hazards (commonly known as "products hability coverage") arising out of one occurrence, and that the $2 million limit represented the most TEC was entitled to for claims for bodily injury or property damage as a result of products-completed operations hazard in any given 12-month period. He further states that in assisting TEC to procure insurance, he quoted "umbrella" policies to TEC, but TEC did not want to pay the extra money for such a policy which would have provided TEC with additional limits over the $1 million per-occurrence limit. (Doc. No. 26, Exh. G).
TEC does not argue, nor would the facts support an argument, that the Waltz and Nelson suits were the result of two occurrences. Rather, TEC argues that it is entitled to the $2 million set forth as the "Operations-Completed Hazard Aggregate Limit," because the policy is ambiguous and should be construed against the insurer, entitling TEC to the higher limit of coverage.
The court must grant summary judgment, if the pleadings, admissions, stipulations, depositions and affidavits demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the parties agree, Missouri law controls resolution of the issue presented. See St. Paul Fire & Marine Ins. Co. v. Schrum, 149 F.3d 878 (8th Cir.1998)(in diversity action, the interpretation of an insurance policy is a question of state law).
*1081 Under Missouri law, if a contract of insurance is unambiguous, it is to be enforced in accordance with its terms. Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co., 195 F.3d 368, 377 (8th Cir.1999). Ambiguous provisions of an insurance policy are construed against the insurer. Id. An insurance contract is ambiguous if there is duplicity, indistinctness or uncertainty in its meaning such that it is reasonably open to different constructions. Id.; State Farm Mut. Auto. Ins. Co. v. Bridges, 6 S.W.3d 170, 173 (Mo.Ct.App.1999). A disagreement between the parties as to the meaning of the policy language does not suffice to create an ambiguity. J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp., 881 S.W.2d 638, 644 (Mo.Ct.App.1994); Windsor Ins. Co. v. Lucas, 24 S.W.3d 151, 153 (Mo.Ct. App.2000). A court interpreting an insurance policy must consider the entire policy as a whole to determine whether any words or phrases are ambiguous. Windsor Ins. Co. v. Lucas, 24 S.W.3d 151, 153 (Mo.Ct.App.2000).
The court concludes that there is no ambiguity in the language of the policy at issue here and that Cincinnati is entitled to judgment as a matter of law. Adopting TEC's position would not only abrogate the per-occurrence limit, it would also ignore the word "aggregate" in the "Products-Completed Operations Aggregate" provision. There is no conflict or ambiguity in a policy that provides a per-occurrence limit and an aggregate limit.
An aggregate limit is "[t]he maximum limit of coverage available under a liability policy during a specified period of time ... regardless of the number of claims that may be made." Rupp, Insurance & Risk Management Glossary at 19 (1991). Its counterpart is the per occurrence limit, which expressly limits the amount to be paid under an insurance policy for hability arising out of each compensable occurrence.
North Am. Philips Corp. v. Aetna Cos. & Sur. Co., 1995 WL 628444, at *1 (Del.Super.Ct.1995); see also International Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co., 998 F.2d 504, 505 (7th Cir.1993) ("An occurrence limit is the maximum amount the insurer will pay for a single event, while an aggregate limit is the maximum amount the insurer will pay for all events that occur within a policy period"); Diamond State Ins. Co. v. Homestead Indus., Inc., 318 S.C. 231, 456 S.E.2d 912, 916 & n. 2 (1995) (citing several cases holding that when a policy limits per-occurrence liability to an aggregate amount, no ambiguity exists); RCA Mutual Ins. Co. v. Sanborn, 918 S.W.2d 893, 895 (Mo. Ct.App.1996) (applying a policy that contained a limit for each "medical incident" and an annual aggregate limit).
Accordingly, the motion of plaintiff for summary judgment (Doc. No. 26) is sustained and the motion of defendant for summary judgment (Doc. No. 27) is denied. An appropriate Declaratory Judgment is issued herewith.
NOTES
[1] The action at bar was consolidated with a declaratory judgment action filed by TEC in state court and removed to this court by Cincinnati, Cause No. 4:00CV1377DDN. By order of October 10, 2000, the court administratively terminated Cause No. 1377. Thus, the unresolved coverage issues are presented for decision in this action.