# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Ware v. First Specialty Insurance Corp.*, 2013 IL App (1st) 113340

| | |
|---|---|
| Appellate Court Caption | JEAN WARE, as Personal Representative of the Estate of Kelly McKinnel, Deceased; NATALIE BROUGHAM; REBECCA CHELIN; JAMES CHIAPPETTA; AMY CHUMLEY; DERRICK CUSICK; JONATHAN D'AUGUSTA; DAVID DERMENJIAN; ANJALEE DESAI; BENJAMIN EISENBERG; JEREMY FARMER, as Personal Representative of the Estate of Sam Farmer, Deceased; MIA FITZGERALD, as Special Administrator of the Estate of Shea Fitzgerald, Deceased; GILMORE S. HAYNIE, as Independent Administrator of the Estate of Margaret G. Haynie, Deceased; SARAH HOFFMAN; DENNIS E. HULL; ADAM HURDER; JORDAN HURDER; LYNDSIE JACKSON; ROBERT V. JACKSON, as Special Administrator of the Estate of John T. Jackson, Deceased; JENNIFER JOHNSON; MUHAMMAD KARIMUDDIN, as Special Administrator of the Estate of Muhammed Hameeduddin, Deceased; ALAN J. KLINGER; KENNETH R. KORANDA, as Executor of the Estate of Robert A. Koranda, Deceased; PHYLLIS M. KUMPF, as Administrator of the Estate of Eric F. Kumpf, Deceased; JASON LEV; JENNIFER S. LEVIN; MEGHAN R. LIMACHER; J. PATRICK LUPTON, as Personal Representative of the Estate of Eileen Lupton, Deceased; MOLLY NILAN; THOMAS J. O'CONNELL; SEAN O'DELL; ELIZABETH PAGEL, as Special Administrator of the Estate of Kelly Pagel, Deceased; WILLIAM PRIMACK; GEOFFREY C. RAPP; ALIBE ROBERTSON; MELISSA SHAW; JAMES A. SHERIFF, as Independent Administrator of the Estate of Katherine E. Sheriff, Deceased; BONNIE SORKIN, as Special Administrator of the Estate of Julie Sorkin, Deceased; JAY SORKIN, as Special Administrator of the Estate of Julie Sorkin, Deceased; CULLAN STEFANIK; ALEXIS TESSLER; WHITNEY TURNER; and HENRY J. WISCHERATH, SR., as Personal Representative of the Estate of Henry J. Wischerath, Jr., a/k/a Jay Wischerath, Deceased; Plaintiffs-Appellants, v. FIRST SPECIALTY INSURANCE CORPORATION, Defendant-Appellee. |

| District & No. | First District, Fifth Division<br>Docket No. 1-11-3340 |
|---|---|
| Filed | January 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant insurer was liable to the 42 plaintiffs killed and injured when a three-story porch system on an apartment building collapsed, but that liability was limited to the $1 million per occurrence limit, not the aggregate limit of $2 million, since the collapse and the resulting deaths and injuries constituted a single occurrence pursuant to the language of the policy, regardless of the fact that some of the deaths and injuries did not occur until some time after the collapse. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2010-CH-10841; the Hon. Franklin U. Valderama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, P.C., of Chicago, for appellants.<br><br>Robert P. Conlon and James W. Kienzle, both of Walker Wilcox Matousek LLP, of Chicago, for appellee. |
| Panel | JUSTICE TAYLOR delivered the judgment of the court, with opinion.<br>Justices Howse and Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1    At approximately 12:30 a.m. on June 29, 2003, a three-story porch located at the rear of the property at 713 West Wrightwood in Chicago, Illinois, collapsed during a party, resulting in the deaths of 12 individuals and injuries to 29 more. Those individuals and their estates

(collectively plaintiffs) ultimately settled their claims with the building owner and others (collectively defendants) in the underlying tort action and obtained an assignment of rights against appellant, First Specialty Insurance Corporation (First Specialty). Plaintiffs then filed this declaratory action against First Specialty, arguing that because the porch collapse constituted more than one occurrence, First Specialty was liable to them for the aggregate limit of the relevant insurance policy, $2 million, rather than the $1 million per occurrence limit that First Specialty had already paid. The trial court granted summary judgment in favor of First Specialty and plaintiffs appealed.

## I. BACKGROUND

The following facts were stipulated to by the parties in a jointly filed "Agreed Statement of Facts" filed with the trial court on March 30, 2011, and therefore are not in dispute in this appeal.

### A. The Collapse

In 2003, Phillip Pappas owned the three-story building located at 713 West Wrightwood in Chicago, Illinois. The building contained apartment units on each floor. Attached to the rear of the building was a three-story porch system, with stairways leading from the ground to the first floor, from the first to the second floor, and from the second to the third floor. On the evening of June 28, 2003, the residents of the second- and third-floor apartments hosted a party. At approximately 12:30 a.m. on the morning of June 29, 2003, while all of the plaintiffs were standing on either the second or third floor, the third floor of the porch suddenly collapsed onto the second floor of the porch, which immediately collapsed onto the first floor of the porch. The collapse was not interrupted by any intervening human acts or other preceding or subsequent events.

Ultimately, 13 individuals died and 29 more were injured "directly and solely from the porch collapse." Many of those injuries did not manifest themselves for days or weeks after the collapse. The parties agree that "[t]here are no intervening acts or circumstances which could have or did contribute to and/or cause the deaths, injuries and/or mental conditions" suffered by the plaintiffs.

### B. The Policy

At the time of the accident, Pappas' property was insured by policy No. IRG 49077 (the policy) issued by defendant First Specialty for the policy period from February 1, 2003, to February 1, 2004. The other named insureds on the policy were Michael Aufrecht, L.G. Properties Co., and Restoration Specialists, LLC (the insureds). The policy's "Coverage A Bodily Injury and Property Damage Liability" coverage unit had an "Occurrence Limit of $1,000,000 and a General Aggregate Limit of $2,000,000, subject to a $5,000 per occurrence deductible."

The policy's "Limits of Insurance" section provided, in pertinent part:

"1. The Limits of Insurance Shown in the Declarations and the rules below fix the

most we will pay regardless of the number of:

a. Insureds;

b. Claims made or 'suits' brought; or

c. Persons or organizations making claims or bringing 'suits'.

\* \* \*

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limits [*sic*] is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence'."

The policy defines bodily injury as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these as [*sic*] any time" and occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

¶ 10                 C. The Consolidated Litigation and Settlement

¶ 11     Plaintiffs filed various complaints against the aforementioned insureds, which were later consolidated for discovery purposes only (hereinafter the Consolidated Litigation). The general thrust of those complaints was that the insureds' failure to inspect the porch and maintain it in a reasonably safe manner was the cause of the plaintiffs' deaths and injuries. First Specialty provided representation to the insureds and other defendants in the Consolidated Litigation, subject to a reservation of rights that the consolidated litigation "arose out of one accident or 'occurrence' and that First Specialty's liability in connection with the Consolidated Litigation under no circumstances would exceed the Policy's $1,000,000 Each Occurrence Limit."

¶ 12     On March 11, 2010, the parties to the Consolidated Litigation, as well as Philadelphia Indemnity Insurance Company (Philadelphia), the insureds' excess insurance carrier, entered into a settlement agreement resolving the litigation. Pursuant to the terms of that agreement, Philadelphia agreed to pay its policy limit of $15 million, the insureds agreed to pay a confidential amount, and First Specialty agreed to pay the policy's $1 million occurrence limit. As part of the agreement, all actions comprising the Consolidated Litigation were dismissed with prejudice.

¶ 13     That same day, First Specialty executed an assignment of rights with plaintiffs, pursuant to which plaintiffs had the limited right to attempt to recover the difference between the policy's general aggregate limit of $2 million and its occurrence limit of $1 million. The assignment restricted plaintiffs from asserting any other claim under the policy.

¶ 14     On March 16, 2010, plaintiffs initiated the instant action against First Specialty, seeking a declaratory judgment stating that First Specialty was obligated to pay out an additional $1 million under the policy because the collapse constituted more than one occurrence. First Specialty denied these allegations, arguing that plaintiffs' injuries all stemmed from one occurrence, the collapse, and therefore it was not required to pay an additional $1 million.

The parties submitted cross-motions for summary judgment in the spring of 2011, asserting essentially the same arguments. The trial court denied both motions in a July 15, 2011 order. First Specialty filed a motion to reconsider that ruling on September 22, 2011.

¶ 15    On November 22, 2011, the trial court entered a written memorandum opinion and order denying summary judgment for the plaintiffs and granting it in favor of First Specialty. In so holding, the trial court found:

"[T]here was simply one source of all Plaintiffs' injuries and resulting deaths. The porch collapse, and only the porch collapse, was the dangerous condition causing harm to the Plaintiffs. The parties agree that the porch collapse was not interrupted by any intervening human acts or other preceding or subsequent events. No intervening acts or circumstances broke the link between the injury causing event and the resulting injuries to Plaintiffs. Only where each asserted loss is the result of a 'separate and intervening human act,' whether negligent or intentional, or each act increased the insured's exposure to liability, Illinois law will deem each such loss to have arisen from a separate occurrence."

Thus, the trial court concluded that because the porch collapse and resulting injuries and deaths constituted only one occurrence, First Specialty was not obligated to pay plaintiffs the aggregate limit of $2 million. This appeal followed.

¶ 16                                          II. ANALYSIS

¶ 17    The sole issue raised on appeal is whether the trial court erred when it found the porch collapse to be one occurrence and granted summary judgment in favor of First Specialty. Plaintiffs contend that under *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446 (2009), because several individual plaintiffs' injuries and deaths did not occur until some time after the collapse, First Specialty could not establish that all of the injuries and deaths constituted one occurrence under the policy. First Specialty, however, asserts that under the plain language of the policy and under Illinois law, the trial court properly found that plaintiffs' injuries arose out of a single occurrence, because all of those injuries resulted from a single cause, namely, the collapse of the porch. We agree with First Specialty.

¶ 18    Summary judgment should be granted if all the evidence on file shows that there is no genuine issue as to any material fact and that the "moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). "By filing cross-motions for summary judgment, the parties agree that no factual issues exist and this case turns solely on legal issues subject to *de novo* review." *Gaffney v. Board of Trustees of the Orland Park Fire Protection District*, 2012 IL 110012, ¶ 73.

¶ 19    This case requires us to interpret relevant provisions of the policy in order to determine whether the porch collapse and resulting injuries and deaths constituted a single occurrence under the policy language. In doing so, we are guided by our supreme court's admonition that our "primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement. [Citation.] In performing that task, the court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Nicor, Inc. v. Associated Electric & Gas*

*Insurance Services, Ltd.*, 223 Ill. 2d 407, 416 (2006). Where the terms of the policy are unambiguous, we will give them their plain and ordinary meaning and apply them as written. *Pekin Insurance Co. v. Beu*, 376 Ill. App. 3d 294, 296-97 (2007). Moreover, a policy provision is not rendered ambiguous merely because the parties disagree as to its meaning; rather, an ambiguity only exists where the policy language is susceptible to more than one reasonable interpretation. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). However, in determining what constitutes an occurrence under the language of the policy, we are also mindful that "what seems like a single accident, happening, or event to the person who triggered the incident giving rise to the loss for which coverage is sought may be perceived as multiple accidents, happenings or events from the perspective of those who sustained injury or damage as a result of the insured's conduct." *Nicor*, 223 Ill. 2d at 418.

¶ 20    Here, it appears to us that, under the clear and unambiguous language of the policy, the injuries in the instant case were all the result of a single occurrence. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy further provides that "damages because of 'bodily injury' include damages claimed by any person or organization for *** death resulting at any time from the 'bodily injury.' " The term "bodily injury" is defined in the policy as "injury, sickness or disease sustained by a person, including death resulting from any of these *at any time*." (Emphasis added.)

¶ 21    In light of this language, we can see nothing in the policy which would support plaintiffs' contention that the collapse constituted multiple occurrences under the policy. According to the policy, the per-occurrence limit of $1 million applied to all injuries or deaths arising "at any time" out of an accident. As stated above, the parties agree that "[t]here are no intervening acts or circumstances which could have or did contribute to and/or cause the deaths, injuries and/or mental conditions" suffered by the plaintiffs, and all of those injuries were caused "directly and solely from the porch collapse." Thus, plaintiffs' argument that it is entitled to a finding of multiple occurrences because "First Specialty cannot possibly show that all of the individuals who died at the scene of the porch collapse, died at or near the same time" is without merit. Under the language of the policy, which states that an occurrence encompasses any injuries or deaths at any time, it is immaterial when the individual plaintiffs' injuries or deaths occurred, because, as plaintiffs concede, the collapse was the sole cause of those injuries and deaths. Therefore, because the language of the policy is unambiguous and indicates that the collapse and resulting injuries and deaths constituted only one occurrence, we cannot say that the trial court erred in granting summary judgment in favor of First Specialty. See *Pekin Insurance Co.*, 376 Ill. App. 3d at 296-97 (where terms of insurance policy are unambiguous, courts will apply them as written).

¶ 22    However, even if we were to accept plaintiffs' contention that the policy is ambiguous and look past the clear language of the policy, we would nevertheless reach the same conclusion and find that the trial court did not err in granting summary judgment in favor of First Specialty because all of plaintiffs' injuries were caused by the same negligent act.

¶ 23    Our supreme court has noted that sometimes "the terms of the insurance policy are not always sufficient, standing alone, to permit a definitive determination as to whether a particular case involves one occurrence or many." *Nicor*, 223 Ill. 2d at 418. In such cases,

Illinois courts, as well as courts in a majority of other jurisdictions, will apply the "cause theory" to determine the number of occurrences "by referring to the cause or causes of the damages." *Nicor*, 223 Ill. 2d at 418. Courts favor this approach over the effect theory, which determines the number of occurrences based on the number of claims or injuries resulting from an event. The *Nicor* court distinguished these two theories using the following example:

> "The difference between these two approaches is illustrated by the following hypothetical. Assume that a motorist is traveling down a street lined with parked cars. Looking away from the roadway to change the station on his car's radio, the motorist allows his vehicle to wander. As a result, his car strikes the sides of three of the parked cars in succession, damaging each of them. The owners of the three damaged vehicles sue, and the vehicle owner seeks indemnification from his automobile insurance carrier. Under the effect theory, the fact that three cars were damaged and three claims were filed would mean that there were three 'occurrences' for purposes of determining liability coverage, absent specific policy language to the contrary. Under the cause theory, on the other hand, the fact that the damage to all three vehicles resulted from the same conditions and was inflicted as part of an unbroken and uninterrupted continuum would yield the conclusion that there was only one occurrence." *Nicor*, 223 Ill. 2d at 418-19.

¶ 24 Under the cause theory, the time at which injuries manifest themselves is irrelevant to a determination of the number of occurrences. *Illinois National Insurance Co. v. Szczepkowicz*, 185 Ill. App. 3d 1091, 1096 n.2 (1989) ("one occurrence can result in injuries suffered over a period of time; in such a case, time would be irrelevant to a determination of the number of occurrences"). The only relevant question is how many separate events or conditions led to a party's injuries. *Szczepkowicz*, 185 Ill. App. 3d at 1096 n.2.

¶ 25 Applying the cause theory to the facts of this case leads to the inescapable conclusion that the collapse constituted only one occurrence under the policy. There is no dispute that the collapse was the sole and proximate cause of all plaintiffs' injuries, nor is there any allegation that any separate or intervening acts or circumstances contributed to their injuries. The parties stipulated to this in their agreed statement of facts, and plaintiffs have provided no evidence which would tend to support the existence of anything which would "deem each such loss to have arisen from a separate occurrence." (Internal quotation marks omitted.) *Addison*, 232 Ill. 2d at 457. Because the parties are in agreement that the porch collapse was the single cause of all of plaintiffs' injuries, there can be no question that, under the cause theory, the collapse constituted only one occurrence under the policy and, therefore, the trial court did not err in granting summary judgment in favor of First Specialty.

¶ 26 Plaintiffs, however, contend that our inquiry must go beyond the cause theory and apply the "time and space test" as articulated in *Addison*, 232 Ill. 2d at 461, which, they allege, requires a reversal of summary judgment in favor of First Specialty. For reasons to be discussed below, we believe the time and space test is inapplicable to the case at bar. However, even if we were to apply this test to the facts of this case, we would nevertheless reject plaintiffs' contention that its application mandates a finding in their favor.

¶ 27 In *Addison*, the court found that where multiple injuries are sustained over an open-ended period of time due to an "ongoing negligent omission," rather than an affirmative act or acts

of negligence, the cause theory as stated in *Nicor* may be an insufficient rubric by which to determine the number of occurrences involved. *Addison*, 232 Ill. 2d at 457-58. For instance, if a landowner negligently failed to secure his property, and several people were injured on the property at various times over the course of several weeks, the *Addison* court stated that it would be unreasonable to bundle all of their injuries into a single occurrence, even though all of their injuries were caused by the landowner's ongoing negligent failure to secure the property. *Addison*, 232 Ill. 2d at 458. The *Addison* court therefore adopted the time and space test as a limiting principle in such situations. *Addison*, 232 Ill. 2d at 461. Under this test, " 'if cause and result are simultaneous or so closely linked in time and space as to be considered by the average person as one event,' then the injuries will be deemed the result of one occurrence." *Addison*, 232 Ill. 2d at 460 (quoting *Doria v. Insurance Co. of North America*, 509 A.2d 220, 224 (N.J. Super. Ct. App. Div. 1986)).

¶ 28    The *Addison* court then applied the time and space test to the facts of that case. In *Addison*, two boys left their homes to go fishing and never returned. Their bodies were found several days later in an excavation pit. *Addison*, 232 Ill. 2d at 448-49. The boys' times of death could not be determined, nor could the amount of time that elapsed between their deaths. *Addison*, 232 Ill. 2d at 450. The issue on appeal was whether the boys' deaths constituted one or two occurrences under the relevant insurance policy. *Addison*, 232 Ill. 2d at 450. Applying the time and space test, our supreme court found that there was insufficient evidence to determine whether the boys' injuries "were so closely linked in time and space to be considered one event." *Addison*, 232 Ill. 2d at 462. Because the insurer bore the burden of proof on that issue, the court found against the insurer and held that the boys' deaths constituted separate occurrences. *Addison*, 232 Ill. 2d at 462.

¶ 29    Plaintiffs rely primarily on *Addison* in support of their contention that summary judgment in their favor is warranted under the time and space test. However, the present case, unlike *Addison*, is not a case in which multiple injuries were sustained over time due to an ongoing negligent omission. Plaintiffs have conceded that all of their injuries were caused "directly and solely" by a single incident–the porch collapse–instead of multiple incidents occurring over an open-ended period of time. Consequently, the time and space test is inapplicable here. Rather, the cause theory as described in *Nicor* is controlling.

¶ 30    In this regard, the case of *Travelers Property Casualty Co. of America v. RSUI Indemnity Co.*, 844 F. Supp. 2d 933 (N.D. Ill. 2012), is instructive. *RSUI* involved two claims against a meat product manufacturer that produced a batch of ground beef that was tainted by E. coli. *RSUI*, 844 F. Supp. 2d at 934. The first claimant became ill after eating some of the tainted meat on April 11, 2009; he subsequently transmitted the infection to his granddaughter, the second claimant, who became ill on May 9, 2009. *RSUI*, 844 F. Supp. 2d at 934. The *RSUI* court held that these two claims involved a single occurrence, and, in doing so, it rejected the contention that the time and space test would apply. *RSUI*, 844 F. Supp. 2d at 936. The court explained:

    "The time and space test is used only when the negligence alleged is the result of an 'ongoing omission,' such as the failure by the land owner in *Addison* to secure his property. [Citation.]

As Travelers correctly argues, the negligence asserted against Valley Meats is a discreet act–the production of a single batch of tainted meat. There were no intervening acts of negligence by Valley Meats that occurred between the time [the first claimant] and [the second claimant] became ill. Because the damages for which coverage is sought result from the manufacture and sale of a defective product, 'the loss emanates from a single cause and there is but one occurrence.' " *RSUI*, 844 F. Supp. 2d at 936 (quoting *Nicor*, 223 Ill. 2d at 432).

Likewise, in the present case, it is undisputed that the injuries suffered by plaintiffs all arose from a discrete incident: the collapse of the porch. Because the plaintiffs' losses all emanate from that single cause, under *Nicor*, there is but one occurrence. See *Nicor*, 223 Ill. 2d at 432.

¶ 31 Moreover, even if we were to apply the time and space test to the case at bar, we would still reach the same result. Unlike in *Addison*, the trial court in this case was presented with more than sufficient evidence to conclude that the cause of plaintiffs' injuries was so closely linked in time and space as to be considered by the average person as one event. As stated above, there is no dispute regarding the causes or circumstances surrounding plaintiffs' injuries and deaths. As the trial court correctly noted, "much was unknown as to the cause of the boys' deaths [in *Addison*]. That mystery, however, is not present in this case. All of the Plaintiffs' deaths and injuries can be directly traced to one cause: the porch collapse." In light of the evidence in the record and the facts stipulated to by the parties, we find no error in this conclusion. Consequently, even if we were to apply the time and space test to this case, we would nevertheless conclude that summary judgment in favor of First Specialty was proper.

¶ 32                    III. CONCLUSION

¶ 33 For the foregoing reasons, we affirm the decision of the trial court.

¶ 34 Affirmed.