# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Bituminous Casualty Corp. v. Iles*, 2013 IL App (5th) 120485

---

Appellate Court
Caption

BITUMINOUS CASUALTY CORPORATION, Plaintiff and Counterdefendant-Appellant, v. GLEN R. ILES, CANDACE E. ILES, RONALD J. ALDREDGE II, as Administrator of the Estate of Ronald J. Aldredge, Deceased, and KEVIN L. ALDREDGE, Defendants and Counterplaintiffs-Appellees (Dutch Creek Company, French Creek Company, Eldorado, Inc., Tri-State Supply, Inc., Bulldog Well Service, Inc., Mason Well Servicing, Inc., V. Louis Fieber, The Estate of V. Louis Fieber, Lisa K. Fieber, Lisa K. Fieber as Executor of the Estate of Samuel L. Fieber, Lucky Dutch Resources, Inc., Hillside Resources, Inc., Lakeview Farms, Inc., Fieber Oil, Inc., Fieber Petro, Inc., Illinois First Mortgage, Inc., City Development, Inc., Lucky Strike Drilling, Inc., Royalty Resources, Inc., Lee Land Incorporated, Marilyn J. Fieber, Marilyn J. Fieber Lifetime Trust, Haggard Well Services, Inc., Haggard Excavation, LLC, Bradley C. Cunningham, Scott Funkhouser, Barry Haggard Tank Truck Service, The City of Collinsville, Illinois, The City of Carmi, Illinois, Auto Owners Insurance Corporation, Liberty Mutual Insurance Corporation, and The Department of Natural Resources, an Illinois State Agency, Defendants).

District & No.

Fifth District
Docket No. 5-12-0485

Filed

July 30, 2013

| | |
|---|---|
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The commercial general liability policies issued by plaintiff unambiguously provided limits for the explosion at an oil and gas well under which the insured's liability for all bodily injury suffered by oil well workers as a result of the explosion was the "Each Occurrence Limit" of $1 million for the first policy and $500,000 for the second policy, not the "General Aggregate Limit" of $2 million for the first policy and $1 million for the second policy, since there was only one occurrence and the single occurrence limit applied. |
| Decision Under Review | Appeal from the Circuit Court of White County, No. 11-MR-15; the Hon. Thomas J. Foster, Judge, presiding. |
| Judgment | Reversed; cause remanded. |
| Counsel on Appeal | Julie A. Webb and Paul R. Lynch, both of Craig & Craig, of Mt. Vernon, and John E. Rodewald and John A. Husmann, both of Bates, Carey, Nicolaides, LLP, of Chicago, for appellant.<br><br>Larry N. Sloss, Jr., and Eric A. St. Ledger, both of Gosnell, Borden, Enloe, Sloss & McCullough, Ltd., of Lawrenceville, for appellees Glen R. Iles and Candace E. Iles.<br><br>Kara L. Jones and John C. Ryan, both of Feirich, Mager, Green, Ryan, of Carbondale, for appellees Ronald J. Aldredge II and Kevin L. Aldredge.<br><br>Michael M. Marick and Rebecca R. Haller, both of Meckler, Bulger, Tilson, Marick & Pearson, LLP, of Chicago, for *amicus curiae* Property Casualty Insurers Association of America. |
| Panel | JUSTICE STEWART delivered the judgment of the court, with opinion.<br>Presiding Justice Spomer and Justice Chapman concurred in the judgment and opinion. |

## OPINION

¶ 1        This insurance dispute arose after an explosion at an oil and gas well. The dispute centers

around the interpretation of two commercial general liability (CGL) insurance policies and whether the policies are ambiguous with respect to the limits of the insurance company's liability under the policies for all bodily injury suffered by oil well workers as a result of the explosion. The circuit court held that the language of the policies' limits was ambiguous, construed the policies against the insurance company, and held that the insurance company's limit of liability was the "General Aggregate Limit" (General Aggregate Limit) of each policy instead of the "Each Occurrence Limit" (Each Occurrence Limit). The insurance company appeals the circuit court's judgment. For the following reasons, we reverse, holding that the limits of coverage contained within the CGL policies are not ambiguous. The unambiguous language of the policies provides that the Each Occurrence Limit for each policy controls the insurance company's limit of liability for all bodily injury caused by the explosion.

¶ 2                                BACKGROUND

¶ 3        The oil well explosion occurred on October 29, 2008, at an oil and gas well (David Stanley #1 Well), located in White County, Illinois. Severe injuries and deaths occurred to oil well workers as a result of the explosion. The injured workers and the estates of the deceased workers (collectively referred to as oil well workers or workers) filed lawsuits in the circuit court of White County against various individuals, entities, or their agents, alleging that their negligence caused the explosion and the resulting injuries and deaths. The entities alleged to be responsible for the workers' injuries and deaths included Dutch Creek Company, French Creek Company, Eldorado, Inc., Tri-State Supply, Inc., Bulldog Well Service, Inc., and Mason Well Servicing, Inc.

¶ 4        Prior to the explosion, the plaintiff in the present case, Bituminous Casualty Corporation (Bituminous Casualty), had issued a CGL policy (Dutch Creek policy) to Dutch Creek Company, French Creek Company, Eldorado, Inc., and Tri-State Supply, Inc., that covered their liability for "bodily injury" caused by an "occurrence." The Dutch Creek policy's declaration page includes the following "Limits of Insurance": an Each Occurrence Limit of $1 million and a General Aggregate Limit of $2 million.

¶ 5        Bituminous Casualty had also issued a CGL policy (Bulldog Well policy) to Bulldog Well Service, Inc., and Mason Well Servicing, Inc., with language identical to the Dutch Creek policy. The declarations page for the Bulldog Well policy includes limits of insurance in the amount of $500,000 for the Each Occurrence Limit and $1 million for the General Aggregate Limit.

¶ 6        On August 25, 2011, Bituminous Casualty filed a complaint for interpleader pursuant to section 2-409 of the Code of Civil Procedure (735 ILCS 5/2-409 (West 2010)). The circuit court's judgment in this interpleader action is the subject matter of the present appeal. Bituminous Casualty's interpleader action sought an order from the circuit court to deposit the total Each Occurrence Limit for each policy with the court so that the injured oil well workers could assert claims against the deposited funds and establish among themselves their respective rights and claims to any of the funds. Bituminous Casualty tendered $1 million for the Dutch Creek policy Each Occurrence Limit and $500,000 for the Bulldog Well policy

Each Occurrence Limit. The oil well workers were named as defendants in Bituminous Casualty's interpleader action.

¶ 7 Two of the defendants in the interpleader action, Kevin Aldredge and the administrator of the estate of Ronald Aldredge (deceased), filed a counterclaim against Bituminous Casualty requesting the circuit court to enter an order declaring that the policy limit that is available to compensate the oil well workers under the Dutch Creek policy is the General Aggregate Limit in the amount of $2 million, not the $1 million provided by the Each Occurrence Limit. Two other defendants, Glen Iles and Candace Iles, also filed a counterclaim requesting the same relief as the Aldredges and, in addition, requesting that the circuit court enter an order declaring that the policy limit for the Bulldog Well policy is the General Aggregate Limit in the amount of $1 million instead of the $500,000 Each Occurrence Limit. The Aldredges and the Iles subsequently filed motions for summary judgment on their respective counterclaims. Bituminous Casualty filed a cross-motion for summary judgment.

¶ 8 In ruling on the parties' requests for a summary judgment, the circuit court had to analyze the language in the two CGL policies and determine whether they were ambiguous with respect to which policy limit applied to the Aldredges' and the Iles' claims. The Aldredges and the Iles argued that if the policies were ambiguous with respect to the policies' limits, then the policies must be construed against Bituminous Casualty to provide for the higher limits. Bituminous Casualty argued that the unambiguous language of the policies provides that the Each Occurrence Limit applied to claims under each policy because the well explosion constituted a single occurrence.

¶ 9 The provisions in the two policies that are relevant to this issue use identical language. The CGL polices cover the insureds for various losses, and the parties agree that the oil well workers' claims as a result of the explosion fall under the "Coverage A" provision in the policies. Coverage A concerns bodily injury and property damage liability, and this section of the policies provides, in relevant part, as follows:

"**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. ***

(1) The amount we will pay for damages is limited as described in Section **III**–Limits Of Insurance ***

* * *

**b.** This insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'[.]"

¶ 10 The language of "Section III–Limits of Insurance" contained in the policies provides, in relevant part, as follows:

"**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

-4-

**a.** Insureds;

**b.** Claims made or 'suits' brought; or

**c.** Persons or organizations making claims or bringing 'suits'.

**2.** The General Aggregate Limit is the most we will pay for the sum of:
\*\*\*

**b.** Damages under Coverage **A** \*\*\*
\* \* \*

**5.** Subject to **2.** \*\*\* above, \*\*\* the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A** \*\*\*
\*\*\*

because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence'."

¶ 11    The circuit court had to interpret this language in the policies to determine whether any ambiguity existed concerning which of the policy limits applied to the claims resulting from the well explosion, an event that the parties agree was a single occurrence. The Aldredges and the Iles argued that the language of the policies is ambiguous because when paragraph 2 of section III, defining the General Aggregate Limit, is read in conjunction with coverage A, it appears that the General Aggregate Limit applies to claims that arise from a single occurrence. Bituminous Casualty disagreed and argued that the unambiguous language of the policy provides that the limit of coverage for a single occurrence is the Each Occurrence Limit.

¶ 12    The circuit court agreed with the Aldredges and the Iles that the policies were ambiguous. Therefore, the court construed them in favor of the insureds and the largest coverage limit. The court granted the Aldredges' and the Iles' motions for summary judgment and denied Bituminous Casualty's cross-motion for summary judgment.

¶ 13    In finding an ambiguity within the policy language, the circuit court first looked to section III of the policies and noted that under section III's language, a reader of the policy is directed to the declarations page and the rules within section III to determine the most the insurance company will pay. The court looked at the declarations page and noted the two limits at issue, but also noted that the declarations do not indicate when or under what circumstances either of those two limits would be applicable. The court concluded, therefore, that "the reader must refer back to the language of Section III–Limits of Insurance."

¶ 14    The court then focused its analysis on paragraph 2 of section III and concluded that the language of paragraph 2 of section III "refers to and incorporates the language of Coverage A to obtain the General Aggregate Limit." Coverage A, in turn, provides for payment of bodily injury that "is caused by an 'occurrence.' " The circuit court concluded as follows:

"By referring to and incorporating into paragraph 2 the language of Coverage A, which concerns paying damages for 'bodily injury' \*\*\* only if the bodily injury is caused by an occurrence \*\*\*, and by failing to otherwise limit, define[,] or explain what is meant by 'General Aggregate Limit', Bituminous [Casualty] has created an ambiguity as to

whether the General Aggregate Limit or the Each Occurrence Limit applies to the bodily injury alleged in the underlying Complaints."

¶ 15    The court concluded that Bituminous Casualty does not "choose language for the Dutch Creek policy or the Bulldog Well policy to make clear when the General Aggregate limit is applicable and when the Each Occurrence limit is applicable." Therefore, the court held that it must construe the policies "against Bituminous [Casualty] and in favor of the more favorable coverage, being the General Aggregate Limit."

¶ 16    The court also concluded that the ambiguity with respect to the Dutch Creek policy is further compounded because the declarations page for the Dutch Creek policy includes the following notation: "Amending GL Limit to $2,000,000/2,000,000/1,000,000/1,000,000." The court found it significant that the notation did not set "forth beside each number the coverage which is applicable to such number."

¶ 17    In granting a summary judgment in favor of the Aldredges and the Iles, the circuit court declared that the Dutch Creek policy provided $2 million in liability coverage as a result of the well explosion and that the Bulldog Well policy provided $1 million in liability coverage. Bituminous Casualty now appeals from the circuit court's summary judgment.

¶ 18                                            ANALYSIS

¶ 19    A summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). We review the trial court's summary judgment ruling under a *de novo* standard of review. *American Service Insurance Co. v. Jones*, 401 Ill. App. 3d 514, 520, 927 N.E.2d 840, 845 (2010). In addition, in the present case, the issue of whether to enter a summary judgment centered around interpreting the language of insurance contracts to determine whether any ambiguity existed with respect to the policies' limits. The interpretation of an insurance policy and the coverage provided are questions of law that are appropriate for resolution through summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993). The determination of whether a contract is ambiguous is a question of law that we review *de novo*. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153-54, 821 N.E.2d 206, 214 (2004). Under the *de novo* standard of review, we perform the same analysis a trial court would perform and give no deference to the judge's conclusions or specific rationale. *Bank of America National Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, ¶ 3, 981 N.E.2d 1.

¶ 20    The rules for construction of an insurance contract are well established. "An insurance policy is a contract and is subject to the general rules governing contract interpretation." *Progressive Premier Insurance Co. v. Cannon*, 382 Ill. App. 3d 526, 528, 889 N.E.2d 790, 793 (2008). "A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy," and the policy's words are given their plain and ordinary meaning. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362-63, 860 N.E.2d 307, 314

(2006). If the words in a policy are susceptible to more than one reasonable interpretation, however, the court must consider them ambiguous and construe them strictly against the insurer that drafted the policy and in favor of the insured. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09, 607 N.E.2d 1204, 1212 (1992).

¶ 21   A contract is not rendered ambiguous just because the parties disagree on its meaning. *Central Illinois Light Co.*, 213 Ill. 2d at 153, 821 N.E.2d at 214. In addition, the courts should not distort the language of an insurance policy to create an ambiguity where one does not exist. *Smith v. Neumann*, 289 Ill. App. 3d 1056, 1064, 682 N.E.2d 1245, 1251 (1997). "[T]he absence of a definition does not render a policy term ambiguous, nor is it ambiguous simply because the parties can suggest creative possibilities for its meaning." *Id.*, 682 N.E.2d at 1250. We must assume that every provision within the insurance policies was intended to serve a purpose. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433, 930 N.E.2d 999, 1004 (2010). Accordingly, rather than looking at an isolated part of the policy, we must look at all of the provisions as a whole to determine whether an ambiguity exists. *Id.*

¶ 22   In the present case, unlike the circuit court, we find no ambiguity with respect to the limits of Bituminous Casualty's liability with respect to a single occurrence under the CGL policies. When the provisions of the CGL policies are considered as a whole, the unambiguous language provides that the maximum amount that Bituminous Casualty is required to pay for a single occurrence is the Each Occurrence Limit provided for in each policy. Specifically, paragraph 5 of section III of the policies states that the Each Occurrence Limit is the most the insurance company will pay for bodily injury "arising out of any one 'occurrence.' " Since the parties agree that the injuries resulting from the well explosion were caused by only one "occurrence," this unambiguous language of the policies limits Bituminous Casualty's coverage to the Each Occurrence Limit for each policy.

¶ 23   We believe that this decision is supported by Illinois case law as well as decisions from other jurisdictions. For example, in *Scottsdale Insurance Co. v. Robertson*, 338 Ill. App. 3d 397, 398, 788 N.E.2d 279, 280 (2003), tenants sustained bodily injuries as a result of carbon monoxide poisoning in an apartment building. The landlord was insured by a CGL policy with language identical to the policies in the present case. *Id.* at 400, 788 N.E.2d at 281-82. The tenants argued that the policy was ambiguous concerning application of the policies' "Limits of Insurance." The tenants attempted to incorporate the policies' definition of "bodily injury" into language of the occurrence limit to argue that a reasonable reading of the occurrence limit is that it applies to a single individual. Therefore, the tenants argued, each person who sustained an injury had his or her own "occurrence." *Id.* at 400-01, 788 N.E.2d at 282. The court disagreed with the tenants' reading of the policies.

¶ 24   The *Robertson* court stated that the policy language "explicitly makes its per-person limit of liability *subject to* its per-occurrence limit." (Emphasis in original.) *Id.* at 403, 788 N.E.2d at 284. Specifically, identical to the language in the policies in the present case, the court noted the policy stated, " 'the Each Occurrence Limit is the most we will pay for the sum of *** Damages under Coverage A *** because of all "bodily injury" and "property damage" arising out of any one "occurrence." ' " *Id.*

¶ 25   The Aldredges and the Iles point out that the *Robertson* case did not address the precise

issue that is before the court in the present case. We agree that the *Robertson* court did not decide whether an ambiguity existed within the language of a general aggregate limit. Nonetheless, we believe *Robertson* is instructive in the present case in analyzing the language of the policies to determine whether an ambiguity exists.

¶ 26     In the present case, the language of coverage A of the policies defines the circumstances in which the insurance company will cover the insured's liability for bodily injury. Coverage A applies only if the bodily injury "is caused by an 'occurrence' that takes place in the 'coverage territory.' " Therefore, in determining whether Bituminous Casualty will pay for a bodily injury, a policy reader must first determine whether the injury was the result of an "occurrence" in the "coverage territory." In the present case, the parties agree that the bodily injuries and deaths that resulted from the well explosion were caused by an occurrence in the coverage area.

¶ 27     Next, the policy directs the reader to section III to determine the maximum amount the insurance company will pay. As noted in our analysis above, the language of the Each Occurrence Limit unambiguously limits the amount Bituminous Casualty will pay for "any one 'occurrence'," and in the present case, the parties agree that the injuries and deaths resulted from only one occurrence. Therefore, the Each Occurrence Limit applies to the oil well workers' claims in the present case. Next, the reader looks at the General Aggregate Limit to see the most the insurance company will pay for the "sum of" claims that are paid within the Each Occurrence Limit to determine the "aggregate" amount it will pay during the policy period.

¶ 28     The circuit court held that the language of the General Aggregate Limit created an ambiguity because it does not use language that clearly indicates that it does not apply for a single occurrence. We disagree, because the language of the General Aggregate Limit specifically tells the reader that it is the most Bituminous Casualty will pay for "the *sum* of" various damages, including bodily injury damages. (Emphasis added.) Therefore, when the General Aggregate Limit is read in conjunction with the Each Occurrence Limit, it becomes apparent that the General Aggregate Limit applies to the *sum of* damages the insurance company must pay for multiple occurrences that occur during the policy period. By using the terms "Aggregate" and "the sum of," we believe that the policy expresses the clear intent of the parties with respect to the purpose of the General Aggregate Limit.

¶ 29     If we were to adopt the circuit court's interpretation, having an Each Occurrence Limit and a General Aggregate Limit with respect to coverage A would serve no purpose. Because the circuit court's reading of the language of the policies is inconsistent with the policy as a whole, we do not believe it is a *reasonable* one. Therefore, we disagree with the circuit court's holding that the policies are ambiguous.

¶ 30     We believe that other cases decided in Illinois also support our conclusion that the language of the policy unambiguously establishes that the occurrence limit applies when multiple claims of bodily injury arise from a single occurrence. In *Ware v. First Specialty Insurance Corp.*, 2013 IL App (1st) 113340, 983 N.E.2d 1115, several injuries and deaths resulted when a porch collapsed during a party. The property was insured by a policy that included an occurrence limit that limited the insurance company's liability for all bodily

injury " 'arising out of any one "occurrence." ' " *Id.* ¶ 9. The plaintiffs filed a complaint seeking a declaratory judgment stating that the porch collapse constituted more than one occurrence; therefore, the insurance company was obligated to pay the amount of the policy's general aggregate limit rather than its occurrence limit. *Id.* ¶ 14. The court, however, held that the injuries resulted from a single occurrence. *Id.* ¶ 17. Again, the court did not address the exact issue before us in this appeal. However, the *Ware* court held that because there was only one occurrence and because the policy's language was unambiguous, the single occurrence limit applied. *Id.* ¶ 21.

¶ 31    Cases from other jurisdictions also support our conclusion. For example, in *Cincinnati Insurance Co. v. Television Engineering Corp.*, 265 F. Supp. 2d 1078 (E.D. Mo. 2003), the court had to decide whether an insurance policy's occurrence limit applied to a claim for bodily injury or whether an aggregate limit applied. The court held that the policy's language concerning which limit applied was not ambiguous. *Id.* at 1081. The court stated that to apply the aggregate limit would not only abrogate the per-occurrence limit, it would also ignore the word "aggregate" in the aggregate limit. The court stated that "[a]n aggregate limit is '[t]he maximum limit of coverage available under a liability policy during a specified period of time ... regardless of the number of claims that may be made.' [Citation.]" *Id.* "Its counterpart is the per occurrence limit, which expressly limits the amount to be paid under an insurance policy for liability arising out of each compensable occurrence." *Id.* The court cited *International Surplus Lines Insurance Co. v. Fireman's Fund Insurance Co.*, 998 F.2d 504, 505 (7th Cir. 1993), where it was stated, "An occurrence limit is the maximum amount the insurer will pay for a single event, while an aggregate limit is the maximum amount the insurer will pay for all events that occur within a policy period."

¶ 32    In the present case, the circuit court found an ambiguity with respect to when the General Aggregate Limit applied because, the court held, section III "incorporates the language" of coverage A into the definition of "General Aggregate Limit." The circuit court reasoned that because coverage A provides for payment of bodily injury that is "caused by an 'occurrence,' " the General Aggregate Limit also provides the limit of coverage when bodily injury is "caused by an 'occurrence,' " *i.e.*, a single occurrence.

¶ 33    We disagree with the circuit court's analysis. It is not necessary to incorporate any of the language of coverage A into the language establishing the General Aggregate Limit in order to understand whether it applies to a single occurrence. As noted above, the meaning of the Each Occurrence Limit and the General Aggregate Limit can be determined by simply reading section III as a whole. Section III's reference to coverage A merely informs the reader that the policy limits being described applied to any damages that are payable under coverage A; it does not purport to incorporate all of the words and phrases of coverage A into section III.

¶ 34    The circuit court also found that the declarations page on the Dutch Creek policy compounded the ambiguity because it contained the following notation: "Amending GL Limit to $2,000,000/2,000,000/1,000,000/1,000,000" without setting forth beside each number the coverage which is applicable to the number. Again, we disagree with the circuit court's analysis.

¶ 35    The Dutch Creek policy originally provided for a $500,000 limit for the following: Each Occurrence Limit, "Personal and Advertising Injury Limit," General Aggregate Limit, and "Products-Completed Operations Aggregate Limit." Later, the parties agreed to raise the limits of insurance to provide for $1 million for Each Occurrence Limit and "Personal and Advertising Injury Limit" and $2 million for General Aggregate Limit and "Products-Completed Operations Aggregate Limit." These limits are expressly set forth in the "Limits of Insurance" section of the declarations page located above the notation and are consistent with the content of the notation. Accordingly, we agree with Bituminous Casualty that the endorsement changes are not ambiguous, but clearly state that the Each Occurrence Limit was increased from $500,000 to $1 million and the General Aggregate Limit was increased from $500,000 to $2 million.

¶ 36                                    CONCLUSION

¶ 37    For the foregoing reasons, we reverse the circuit court's summary judgment and remand this case to the circuit court to conduct further proceedings consistent with this decision.

¶ 38    Reversed; cause remanded.